978 F.2d 1056
 JCA PARTNERSHIP, a Minnesota general partnership; and
Kathryn Page, Trustee of the Estate of O. Walter
Johnson, Appellants/Cross-Appellees,
v.
WENZEL PLUMBING & HEATING, INC., a Minnesota corporation;
and Lawrence Wenzel, Appellees/Cross-Appellants.
 Nos. 91-3697, 91-3793.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 11, 1992.
Decided Nov. 3, 1992.
Rehearing Denied Dec. 10, 1992 and Jan. 25, 1993.
 
 Christopher A. Elliot, St. Paul, Minn., argued (Gary F. Albrecht, on the brief), for appellants.
 Thomas M. Scott, Eagan, Minn., argued, for appellees.
 Before WOLLMAN and HANSEN, Circuit Judges, and ROY,* Senior District Judge.
 HANSEN, Circuit Judge.
 
 
 1
 JCA Partnership and Kathryn Page, Trustee of the Estate of O. Walter Johnson, appeal from the district court's grant of summary judgment in favor of defendants on all counts and its dismissal of the case. Defendants are Wenzel Plumbing & Heating (WPH) and Lawrence Wenzel, WPH's majority shareholder. Although the district court ultimately found in their favor, WPH and Wenzel cross-appeal to challenge the court's finding of a breach of contract. We affirm in part and reverse in part.
 
 I. BACKGROUND
 
 2
 This case concerns a series of transactions involving a 300-unit apartment building in Eagan, Minnesota. Originally, High Sites Properties owned the building. In 1984, High Sites Properties placed a mortgage on the property in favor of Armco Financial Corporation, which later merged with Glenfed Financial Corporation (Glenfed). In 1987, Glenfed assigned its interest in the mortgage to its wholly-owned subsidiary, Glen-Hi Site, Inc. (hereinafter collectively referred to as "Glenfed").
 
 
 3
 In October of 1984, High Sites Properties sold the property to Ralph Ditzler on a contract for deed. In March of 1985, High Sites Properties conveyed by quit claim deed its reserved legal title in the property and assigned its vendor's interest in the contract for deed to WPH. Thereafter, WPH owned the property and was liable for the mortgages. In July of 1985, the estate of Ralph Ditzler assigned his vendee's interest in the contract for deed to O. Walter Johnson. Johnson held the interest as nominee for JCA Partnership (hereinafter collectively referred to as "Johnson"). Under the terms of the contract for deed, Johnson had possession of the building. That contract also provided that the vendor (now WPH) remained liable for the underlying mortgages and that the vendee (now Johnson) would abide by the terms and conditions of the underlying mortgage agreements.
 
 
 4
 In September of 1986, Johnson as vendor entered into a second contract for deed with High Sites Apartments (HSA). Johnson remained liable to WPH on the first contract for deed. Pursuant to the terms of the first contract for deed, Johnson obtained WPH's consent to the second contract for deed. In addition, Johnson obtained an "Estoppel Certificate" from WPH stating that "no condition of default" existed under the first contract. However, the underlying mortgage to Glenfed required consent of the mortgagee before any transfer of interest, and Glenfed wrote Johnson that such consent was not given for the second contract for deed.
 
 
 5
 HSA made monthly payments to Johnson who then paid WPH. WPH then paid the mortgage payments to Glenfed. Johnson was also required to make a $500,000 balloon payment to WPH on October 26, 1986. Johnson did not make the balloon payment in October and stopped making monthly payments in December. WPH made monthly payments to Glenfed through December but made no further payments thereafter.
 
 
 6
 In January of 1987, Glenfed commenced foreclosure proceedings and exercised its right to have a receiver appointed. The receiver took possession of the property on March 10, 1987. In April 1987, WPH sent notice of cancellation of the first contract to Johnson, stating that Johnson's right to possession would be lost if he did not cure the listed defaults in 90 days. Also in April, Glenfed initiated a second foreclosure, accelerating the balance due because of WPH's continued default on the mortgage payments. In June of 1987, the property was sold at a sheriff's sale to Glenfed for the amount due under the mortgage.
 
 
 7
 On July 8, 1987, Johnson met with Wenzel. At this meeting, Johnson paid WPH $825,00 in cash and $82,388.94 in the form of a promissory note to preclude cancellation of the contract for deed. WPH accepted the payment. For purposes of the summary judgment motion, the parties agree that the following paragraph generally reflects the meeting:
 
 
 8
 Wenzel and Johnson shall jointly endeavor to have the Court appointed receiver lifted and restore Johnson or his designee to management of the High Site Apartments. Wenzel agrees that in the event the receiver is lifted Wenzel will make appropriate payments to Glenfed Financial Corporation, a California corporation, as may be necessary to bring the payments on the Glenfed Mortgage current.
 
 
 9
 Johnson cured his default on the contract for deed by his payment to WPH at the meeting. WPH, however, never paid Glenfed. Therefore, the receivership was not lifted and possession was not returned to Johnson. Because the property was not redeemed from the sheriff's foreclosure sale within the statutory period, title passed to Glenfed. Glenfed then sold the property to Wenzel in his personal capacity.
 
 
 10
 In June of 1988, Johnson and JCA Partnership (JCA) filed Chapter 11 bankruptcy petitions. Shortly thereafter, they initiated litigation in bankruptcy court against Glenfed and Glen-Hi Site, Inc. and alleged that those mortgagees participated in a fraudulent conveyance of the building by purchasing the property at the sheriff's sale for less than its reasonably equivalent value, in violation of 11 U.S.C. § 548. Upon the mortgagees' request, Wenzel was added as a party. Johnson and JCA alleged that Wenzel was liable as a subsequent transferee under 11 U.S.C. § 550. Glenfed and Glen-Hi Site, Inc. settled with Johnson and JCA in October of 1989. Shortly before trial, on February 13, 1990, Wenzel and his title insurance carrier also settled. The terms of the settlement agreement with Wenzel and his insurance carrier are set forth in the bankruptcy court's Memorandum Order Enforcing Settlement Agreement, Bky. Nos. 4-88-2824, 4-88-2424 (Bankr.D.Minn. filed Nov. 18, 1991). For the sake of clarity, we call this suit the "fraudulent conveyance action."
 
 
 11
 On January 17, 1990, before the settlement was reached with Wenzel in the fraudulent conveyance action, Johnson commenced this separate action against WPH in bankruptcy court. Wenzel was later added as a party. WPH and Wenzel successfully moved to transfer this case from bankruptcy court to federal district court after the bankruptcy court issued its order enforcing the settlement agreement.
 
 
 12
 This action involves seven counts. Count 1 alleges that Johnson was fraudulently induced to cure his default on WPH's and Wenzel's promises that the money would go to cure the mortgage default. Count 2 states that WPH and Wenzel were unjustly enriched by Johnson's payment. Count 3 asserts that WPH and Wenzel breached the contract for deed both by failing to deliver possession of property to Johnson after the default curing payment was made in July of 1987 and by being unable to complete the terms of the contract by delivering marketable title. Count 4 alleges that the estoppel certificate signed by Wenzel constituted fraud. Count 5 was dismissed without prejudice by the district court and is not involved in this appeal. Count 6 alleges that the payment of the $825,000 constitutes a fraudulent transfer under 11 U.S.C. §§ 544 and 548. Count 7 asserts that Wenzel was a subsequent transferee of the $825,000 avoidable transfer and is liable under 11 U.S.C. § 550. On a motion for summary judgment, the district court dismissed counts 1-4 and 6-7 with prejudice in favor of WPH and Wenzel.
 
 II. DISCUSSION
 
 13
 We review the district court's grant of summary judgment under the same standard as applied by the district court. Rice v. Rice, 951 F.2d 942, 944 (8th Cir.1991) (citation omitted). The district court should be affirmed if, viewing the evidence in the light most favorable to the non-moving party, the full record discloses that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. (citing Fed.R.Civ.P. 56(c)).
 
 A. Counts 2, 3, 6, and 7
 
 14
 In count 3, Johnson alleges breach of contract. Johnson concedes that if a breach of contract is found, counts 2, 6, and 7 should be dismissed. The district court found a breach of contract and, therefore, dismissed counts 2, 6, and 7. The district court also dismissed count 3, however, because it found that recovery for the proven breach of contract claim was barred under the doctrine of election of remedies.
 
 1. Breach of Contract
 
 15
 The basis for the breach of contract claim is that WPH failed to deliver possession to Johnson after Johnson cured his default and saved the contract from forfeiture in 1987.[1] Johnson had a right to possession under the first contract for deed. The contract states that the "Purchaser shall be entitled to possession of the Property" until the purchaser has defaulted and failed to cure the default within the required period. The notices for default that WPH sent to Johnson expressly reference his right to possession. The notice warned Johnson that unless he cured his default, "YOU [Johnson] WILL LOSE YOUR RIGHT TO POSSESSION OF THE PROPERTY."
 
 
 16
 In July of 1987, Johnson paid WPH $825,000 in cash and gave a promissory note in the amount of $82,388.94 to preclude cancellation of the contract for deed or in WPH's words "to retain an interest in the property." See appellee's brief, at 18. Because no cancellation occurred, the contract continued in existence.[2] Therefore, WPH was required to deliver possession to Johnson after that time. WPH's failure to do so was a breach of contract.
 
 
 17
 WPH argues that it did not breach the contract because it was unable to deliver the property as the property was in the receiver's possession at that time and as the foreclosure on the defaulted mortgage occurred as a result of Johnson's default to WPH on the first contract for deed. Although WPH depended upon the revenue of Johnson's payments on the contract to make the mortgage payments, only WPH was liable for making the Glenfed mortgage payments. Therefore, only WPH is legally liable for the foreclosure and the subsequent appointment of a receiver. WPH cannot rely on the consequences of its breach of the mortgage to excuse its inability to comply with the term of the contract for deed that required the delivery of possession upon cure of default. WPH assumed this risk by assuming sole liability for the mortgages.
 
 
 18
 WPH next argues that it did not breach the contract claim based on the July 1987 meeting. WPH cannot argue that the breach of contract claim is based on the meeting because Johnson's breach of contract claim is based upon the written first contract for deed. WPH does argue, however, that any right of possession that Johnson might have had under the contract was waived at the July 1987 meeting. At that meeting, the parties agreed "to jointly endeavor" to have the receivership lifted. Such an agreement, however, did not modify or lessen WPH's contractual obligations to deliver possession to Johnson upon the cure of the default under the contract for deed and to make payments under the mortgage agreement. Johnson did assist in having the receivership lifted by his payment at the July 1987 meeting. That money could have been used to cure, in part, WPH's default on the mortgage. Regardless, WPH remained liable on the mortgages and obligated to perform under the contract for deed. "In contract law, a waiver is defined as an intentional relinquishment of a known right, and it must 'clearly be made to appear from the facts disclosed.' " Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc., 320 N.W.2d 886, 892 (Minn.1982) (citations omitted). Such facts are not present here.
 
 
 19
 Johnson also names Wenzel in his breach of contract claim in the complaint. In the briefs filed by Johnson, however, he states that only WPH is the target of the breach of contract claim. Wenzel in his personal capacity never was a party to the contract for deed nor did he ever assume any obligations under the contract for deed. Johnson does not argue that WPH's corporate veil should be pierced to reach Wenzel. Because Wenzel was not contractually obligated to deliver possession to Johnson, Wenzel did not breach the contract for deed.
 
 
 20
 Because we find that the trial court correctly concluded that WPH breached its contract with Johnson, we affirm the district court's dismissal of counts 2, 6, and 7. We affirm the district court's dismissal of count 3 only to the extent that it pertains to Wenzel.
 
 
 21
 2. Preclusive Effect of Fraudulent Conveyance Action
 
 
 22
 WPH argues that even if the court finds a breach of contract, the doctrine of election of remedies bars count 3, which alleges breach of contract, and that the settlement agreement for the previous fraudulent conveyance action precludes the breach of contract claim. The district court agreed and dismissed count 3. We do not so agree, and we reverse the dismissal of count 3 as to WPH.
 
 
 23
 "The election of remedies doctrine applies when an action was pursued to a determinative conclusion, the [vendee] procured advantage from his or her actions, or if the [vendor] was subjected to injury." Rudnitski v. Seely, 452 N.W.2d 664, 666 (Minn.1990) (citations omitted). The "election of remedies doctrine, insofar as it relates to contract for deeds remedies, rests not so much on consistency as upon concepts of fairness." Id. at 667. "The purpose of the election-of-remedies doctrine is not to prevent recourse to a potential remedy but to prevent double recovery for a single wrong." Northwestern State Bank v. Foss, 197 N.W.2d 662, 666 (Minn.1972) (citation omitted) (emphasis added). For example, a party may not sue for breach of contract damages and then sue for recision of the contract. Id. at 665.
 
 
 24
 The doctrine of election of remedies precludes double redress for a single wrong, but the previous fraudulent conveyance action and this breach of contract claim address separate wrongs. The alleged "wrong" in the fraudulent conveyance action was the sheriff's sale of the property to the mortgagee and the mortgagee's subsequent transfer to Wenzel in his personal capacity for less than its reasonable equivalent value. The damages sought were alleged to be the difference between the fair market value of the property and the amount that Glenfed and later Wenzel paid for the property. In contrast, WPH's "wrong" in this breach of contract action arose from its failure to deliver possession to Johnson after he cured his default. Although WPH could not deliver possession because the mortgagee had possession, that was due to WPH's default and not legally due to Johnson's default. Furthermore, WPH was not even a party to the fraudulent conveyance action. Applying "concepts of fairness," the two actions appear to address separate wrongs and separate parties. Therefore, the breach of contract claim against WPH is not barred by the doctrine of election of remedies.
 
 
 25
 WPH also argues that the settlement agreement precludes the breach of contract claim against WPH. As set forth in paragraph 1(d) of the bankruptcy court's order enforcing the settlement agreement, Wenzel and Johnson agreed that the "Settlement was to have no effect on the rights of the Plaintiffs to pursue the claims as they were set forth in the initial complaint filed in the Separate Adversary Proceeding." At the time of the settlement between Johnson and Wenzel, Johnson had sued WPH in this separate adversary proceeding for damages for breach of contract. Therefore, the settlement agreement specifically permits such a claim to proceed.
 
 
 26
 The alternative remedies sought of recision and of restitution, however, were not a part of the claim at the time of settlement.[3] Paragraph 1(f) of the bankruptcy court's order enforcing the settlement agreement states that "[e]xcept with respect to those claims referred to in Paragraph 1(e) of this Order, the Settlement was to have no effect on the rights of the Plaintiffs to pursue any claim against Wenzel and/or WPH." Paragraph 1(e) only precludes claims "that would give rise to potential liability against Chicago Title to defend or pay further on the Policy." The breach of contract claim against WPH does not fall within paragraph 1(e) because the policy in question covered only Wenzel and not WPH. Therefore, paragraph 1(f) of the settlement applies and the breach of contract claim against WPH seeking recision and restitution is not precluded by the fraudulent conveyance action.
 
 
 27
 We find that neither the doctrine of election of remedies nor the settlement agreement in the fraudulent conveyance action precludes Johnson's breach of contract claim with respect to WPH. We reverse the district court's dismissal of count 3 with respect to WPH and remand it to the district court.
 
 B. Count 1
 
 28
 Count 1 alleged that Johnson was fraudulently induced to cure his default on WPH's and Wenzel's promise that the money would go to cure the mortgage default, reverse the foreclosure sale, reinstate WPH's mortgage, and terminate the cancellation of the first contract for deed. The district court dismissed this count because the promise involved a future act.
 
 
 29
 It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented action or event did not take place. It is true that a misrepresentation of a present intention could amount to fraud. However, it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made.
 
 
 30
 Vandeputte v. Soderholm, 216 N.W.2d 144, 147 (Minn.1974) (citations omitted). The alleged promises were promises for future acts and events. Johnson relies on inferences but provides no evidence that WPH or Wenzel lacked any intention to endeavor to have the receivership lifted. We agree with the district court that summary judgment for WPH and Wenzel on count 1 was appropriate.
 
 C. Count 4
 
 31
 Count 4 alleges that the estoppel certificate signed by Wenzel constituted fraud. The estoppel certificate stated "that there exists no condition for default therein." The district court found that the certificate only references the contract for deed and the balances due under the contract, but not the underlying mortgages. The court concluded that the phrase "no condition for default therein" was truthful because it referred to any payment default under the contract for deed and did not address compliance with the terms of the underlying mortgages. This interpretation is a fair reading of the estoppel certificate. Furthermore, as argued by Wenzel and WPH, even if the certificate did reach the compliance with the provisions of the underlying mortgages, the element of reliance in a fraud action cannot be met as Johnson had been notified in writing that Glenfed was not consenting to the second contract for deed before the certificate was signed and received. We affirm the district court's dismissal of count 4.
 
 III. CONCLUSION
 
 32
 Accordingly, we affirm the district court's dismissal of all counts except count 3. We affirm the dismissal of the claim in count 3 against Wenzel personally but reverse the dismissal of the claim in count 3 against WPH, and we remand for further proceedings with respect to that count. We make clear that the trial court's summary judgment for Johnson on the liability portion of the breach of contract claim in count 3 is correct as to WPH.
 
 
 
 *
 The HONORABLE ELSIJANE TRIMBLE ROY, Senior United States District Judge for the Western District of Arkansas, sitting by designation
 
 
 [1]
 Johnson alleged another basis for his breach of contract claim. His second basis (that WPH breached the contract by failing to deliver marketable title to him) was rejected by the district court because Johnson had never tendered payment for the balance due on the contract. Johnson does not contest this conclusion
 
 
 [2]
 WPH argues that the contract was not "reinstated" with the payment because the promissory note was never paid. WPH, however, did accept the promissory note as well as the $825,000 cash as payment at the July 8, 1987 meeting. That meeting occurred within the 90 day time period allowed for cure in the notice for cancellation. Therefore, the contract was not cancelled and continued in existence. It never had to be "reinstated" because it was never cancelled. Whether or not WPH may have a separate claim on the note is another question
 
 
 [3]
 The district court indicated in footnote 7 that the recision remedy was unavailable because Johnson failed to provide timely notice of such intent and that, therefore, his potential recovery is limited to $825,000. Johnson refutes this point and argues that this issue was neither briefed nor argued. Wenzel and WPH do not appear to deny that this issue was raised sua sponte. The availability of the recision remedy issue should be determined by the district court upon remand after briefing by the parties