# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3828

_____

| | | |
|---|---|---|
| Popp Telcom, formerly known as LDB International Corporation, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| Humbird Securities, Company; Northern Securities, Company, | * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| Washington Sharecom, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| American Sharecom, Inc.; Steven C. Simon; James J. Weinert; William J. King, | * | |
| | * | |
| Defendants-Appellees. | * | |

_____

No. 98-3829

_____

| | |
|---|---|
| Popp Telcom, formerly known as LDB International Corporation, Inc., | * |
| | * |
| Plaintiff-Appellant, | * |

-1-

Humbird Securities, Company;
Northern Securities, Company,

        Plaintiffs,

Washington Sharecom, Inc.,

        Plaintiff-Appellant,

    v.

American Sharecom, Inc.; Steven C.
Simon; James J. Weinert; William J.
King,

        Defendants-Appellees.

———————

Submitted: November 19, 1999

Filed: April 21, 2000

———————

Before WOLLMAN, Chief Judge, LAY, and HANSEN, Circuit Judges.

———————

LAY, Circuit Judge.

Humbird Securities Co. ("Humbird"), Northern Securities Co. ("Northern"), Popp Telcom, Inc. ("Popp"),[1] and Washington Sharecom, Inc. ("Washington") (collectively and hereinafter "Dissenters") , appeal the district court's grant of a motion

———————————

[1]At the outset of the proceedings culminating in this appeal, Popp was known as LDB International Corporation, Inc.

to dismiss and subsequent motion for summary judgment brought by American Sharecom, Inc. ("the Corporation"), Steven C. Simon ("Simon"), James J. Weinert ("Weinert"), and William J. King ("King") (collectively and hereinafter "ASI"). Because we disagree with the district court's analysis and dismissal of the Dissenters' fraud claims, we reverse and remand.

## I. FACTS AND BACKGROUND

We recognize that this case has been before assorted state and federal courts since 1992 and the chronology of events is thus well-documented. Nonetheless, due to the complexity of this appeal, we feel it beneficial to give a somewhat detailed account of the events leading up to this proceeding.

### A. The Business Relationship and the Merger

The Dissenters are former stockholders in American Sharecom, Inc., a Minnesota corporation principally engaged in the business of purchasing telephone line access and reselling long-distance services to small and medium-sized businesses. Simon, Weinert, and King were the President, Vice-President and Chief Financial Officer of the Corporation, respectively. Each man also held a place on the Corporation's Board of Directors.

In April of 1992, the Board voted to approve a freeze-out[2] merger of the Corporation with Sharecom Holdings, Inc., a Minnesota corporation owned exclusively by Simon and Weinert. As a result, every shareholder with the exception of Simon and

_____

[2]"A 'freeze-out' merger is one which forces the minority interest to give up its equity in the corporation in exchange for cash or senior securities while allowing the controlling interest to retain its equity." Sifferle v. Micom Corp., 384 N.W.2d 503, 506 n.1 (Minn. Ct. App. 1986).

Weinert would be cashed out, leaving them as the sole shareholders of the surviving corporation. The Board voted to pay each shareholder, save Simon and Weinert, $17,694.64 per share.[3] The Dissenters opposed the merger and exercised their Dissenters' rights under Minnesota Statute § 302A.471(1)(c), thereby challenging the corporation's proffered payment per share.[4]

The merger became effective on May 8, 1992. The Corporation paid off each shareholder with the exception of the Dissenters. In accordance with Minnesota Statute § 302A.473(7), the Corporation thereafter filed a petition for determination of value with the state court.[5]

## B. The Valuation Proceeding

---

[3]Prior to the merger, Popp stood as the Corporation's second largest shareholder, owning 19% of the 228.775 outstanding shares. Humbird and Northern each owned two shares, and Washington owned 2.025 shares.

[4]Minn. Stat. § 302A.471(1)(c) states:

Subdivision 1. Actions creating rights. A shareholder of a corporation may dissent from, and obtain payment for the fair value of the shareholder's shares in the event of, any of the following corporate actions:
. . . .

(c) A plan of merger, whether under this chapter or under chapter 322B, to which the corporation is a constituent organization . . . .

MINN. STAT. § 302A.471(1)(c) (Supp. 1999).

[5]The Honorable William R. Howard, Hennepin County District Court, Fourth Judicial District, presiding.

Shortly after the Corporation filed its appraisal petition,[6] the Dissenters filed a counterclaim alleging that the merger was invalid due to the grant of fraudulent stock options and the dissemination of misleading proxy materials. The Corporation thereafter moved for dismissal of the counterclaim, which was granted on February 24, 1993. The court found that the counterclaim, which was not compulsory since it had no "logical relationship" to the appraisal action, was outside the limited scope of the valuation proceeding and dismissed it without prejudice. The court further noted that the fraud claim "may be filed again within the applicable statute of limitations period . . . ." The Dissenters did not appeal Judge Howard's dismissal of their counterclaims.

On June 28, 1994, Judge Howard found that the stock had been significantly undervalued. Each share was found to be worth $111,893, over six times the amount the Corporation had paid frozen-out shareholders. By court order, the Corporation paid Popp $4,050,514; Humbird and Northern received $376,792; and Washington was compensated in the amount of $191,193.[7] The Corporation appealed, and the Dissenters cross-appealed; the Minnesota Court of Appeals upheld the decision for the most part, remanding only for reconsideration of the accrual date for prejudgment

---

[6]Minn. Stat. § 302A.473(7) states in relevant part:

> Subd. 7. Petition; determination. If the corporation receives a demand [for supplemental payment], it shall, within 60 days after receiving the demand, either pay to the dissenter the amount demanded or agreed to by the dissenter after discussion with the corporation or file in court a petition requesting that the court determine the fair value of the shares, plus interest.

MINN. STAT. § 302A.473(7) (1998).

[7]Judge Howard's order was amended for purposes not important to this appeal on November 15, 1994.

interest.  See American Sharecom, Inc. v. LDB Int'l Corp., No. C9-94-2419, 1995 WL 321540 (Minn. Ct. App. May 30, 1995) (Sharecom I).

Approximately five months after Judge Howard handed down his decision, Rochester Telephone Corporation, a telecommunications firm based in New York, announced that it was purchasing American Sharecom, Inc. for approximately $190 million in Rochester Telephone stock.[8]   The Dissenters claim this sale aroused their suspicions, and after some investigation, they concluded that ASI had allegedly defrauded the court during the appraisal proceeding.  As a result, on December 16, 1994, the Dissenters moved the Minnesota Court of Appeals to remand the appraisal action to the state court for reconsideration on account of the discovery of new evidence.  In the year following the motion to reopen, the Dissenters allegedly found even more evidence of fraud both during the years leading up to the merger and during the valuation proceeding.  Meanwhile, on August 23, 1995, a Satisfaction of Judgment was entered in the amount of $5,013,327.84 (plus interest) on the valuation proceeding.

On February 6, 1996, Judge Howard agreed to reopen the valuation proceeding to hear the Dissenters' allegations of fraud occurring during the proceeding itself.  However, six months later, the Minnesota Court of Appeals held in American Sharecom, Inc. v. LDB Int'l Corp., 553 N.W.2d 433 (Minn. Ct. App. 1996) (Sharecom II), that Judge Howard had no jurisdiction to vacate the satisfied judgment on the basis of fraud and newly discovered evidence.  The court explicitly noted, however, that the Dissenters had another available remedy in the form of a separate common law fraud action.  See Sharecom II, 553 N.W.2d at 434.

## C. The District Court Proceedings

---

[8]Rochester Telephone Corporation later changed its name to Frontier Corporation.  As such, American Sharecom, Inc. also changed its name to Frontier Communications-North Central Region, Inc.

In May of 1994, prior to Judge Howard's determination in the valuation proceedings and well before the satisfaction of that judgment, the Dissenters served ASI with a complaint alleging common law fraud. In the accompanying cover letter, however, the Dissenters stated they "hereby agree[d]" that ASI "may have an indefinite extension in which to answer or otherwise respond to the complaint . . . ." It was not until November 8, 1996, that the Dissenters filed their fraud claims in state court. At that time, the Dissenters filed an Amended Complaint bringing forth additional factual complaints and a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* On December 2, 1996, ASI removed the case to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331. The Dissenters filed their Second Amended Complaint shortly thereafter.

The crux of the Dissenters' fraud allegations, broadly stated, is that Simon and Weinert "stole control" of the Corporation through a series of fraudulent schemes. Among these allegedly unlawful activities were strawman purchases, misleading tender offers, underpriced stock options, a fraudulent stock split, the freeze-out merger, and material omissions and fraudulent misrepresentations during the valuation proceeding. The Dissenters argue that, through these assorted scams, Simon and Weinert were able to eliminate every other shareholder and reap a huge profit after selling off the Corporation.

On July 11, 1997, the federal district court granted in part ASI's motion to dismiss the fraud action, dismissing only those claims seeking damages related to stock value. Claims unrelated to the value of ASI stock, should any exist, were not subject to the court's dismissal order. In dismissing the allegedly value-related fraud claims, the district court noted that the doctrine of election of remedies prevented the Dissenters from bringing an action for fraud after a determinative conclusion on the appraisal issue. In order to pursue the fraud claims, the court found that the Dissenters should have stayed the appraisal proceeding. Further, the court felt the fraud claims acted as an impermissible collateral attack on the valuation proceeding judgment, as the

court would be required to overrule the state court's determination of the fair value of the stock in order to provide the Dissenters with the sought-after "fair compensation for their interests in ASI." The court also found that the action was barred by collateral estoppel because the issue in the two proceedings was identical, the appraisal proceeding was a final judgment on the merits, the Dissenters were parties to the valuation proceeding, and the Dissenters received a "full and fair <u>opportunity</u>" to litigate their claim in the prior proceeding. That opportunity, according to the court, was the option to stay the valuation proceeding and litigate the fraud claims.

After the partial dismissal, the Dissenters moved for leave to file a Third Amended Complaint to add two state statutory causes of action. The magistrate judge, on referral of the issue from the district court, denied the motion to amend on the same grounds as the district court's earlier dismissal of the complaint alleging fraud. ASI thereafter moved for summary judgment, and that motion was granted by the district court on September 16, 1998. The court rejected the Dissenters' fraud claims based on pre-merger conduct on the theory that the sought-after rescissionary damages were inconsistent with the out-of-pocket damages awarded in the valuation proceeding. Thus, the court held the pre-merger fraud claims, including the RICO claim, were barred by the election of remedies doctrine.[9]

As for the alleged fraud that transpired during the valuation proceeding itself, the court found the claim an impermissible collateral attack on the judgment. It also rejected these claims on the basis that the alleged fraud would have had no effect on the valuation of the stock itself; thus, it could not have damaged the Dissenters. Finally, the court upheld the magistrate's refusal to grant the Dissenters' motion for leave to amend, stating instead that it would leave the order unchanged since it was not

---

[9]Because the court found the RICO claim so barred, it explicitly declined to address whether the claim was barred by the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, § 107, 109 Stat. 737, 758 (1995).

clearly erroneous.

The Dissenters appeal the district court's grants of dismissal and summary judgment.

## II. DISCUSSION

In reviewing a district court's grant of a motion for dismissal, we use a <u>de novo</u> standard of review. See <u>Kulinski v. Medtronic Bio-Medicus, Inc.</u>, 112 F.3d 368, 371 (8th Cir. 1997). We review the district court's grant of summary judgment <u>de novo</u>, as well. See <u>Estate of Gavin v. United States</u>, 113 F.3d 802, 805 (8th Cir. 1997).

## A. Election of Remedies

1. <u>Inconsistent Remedies</u>

In its grant of partial dismissal, the federal district court initially found that the election of remedies doctrine barred the Dissenters from bringing a fraud claim after the appraisal proceeding had come to a determinative conclusion. We hold this to be error.

The election of remedies is "the act of choosing between different remedies allowed by law on the same state of facts, where the party has but one cause of action, one right infringed, one wrong to be redressed." <u>Geo. A. Hormel Co. v. First Nat'l Bank</u>, 212 N.W. 738, 740-41 (Minn. 1927) (citation omitted). The doctrine is frequently seen in situations where the claimant is faced with the choice of affirming the contract or, if the remedy of rescission exists, disaffirming the contract. See <u>Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.</u>, 984 F.2d 223, 228 (7th Cir. 1993) (citing <u>Roberts v. Sears, Roebuck and Co.</u>, 617 F.2d 460 (7th Cir.), <u>cert. denied</u>, 449 U.S. 975 (1980)). The point is, a claimant cannot do both. The

doctrine's purpose is to prevent the claimant from collecting twice for a single misdeed against it.  See Twin Cities Fed.  Sav. & Loan Assoc. v. Transamerica Ins. Co., 491 F.2d 1122, 1125 (8th Cir. 1974).

Although the election of remedies is considered a "harsh" doctrine,  Lear v. Equitable Life Assurance Soc'y, 798 F.2d 1128, 1134 (8th Cir. 1986), it is basically an outmoded  form of collateral estoppel.  Unfortunately, the breadth implied by its name can cause parties to attempt to apply the doctrine in situations where it does not fit.  See Medcom, 984 F.2d at 228.  Election of remedies has no application where a party "has different remedies for the enforcement of different and distinct rights or the redress of different and distinct wrongs."  Hormel, 212 N.W. at 740.

The federal district court held that although parallel fraud and valuation actions could have proceeded initially, once the Dissenters collected their respective judgments in the valuation proceeding, the Dissenters were barred from pursuing the fraud claim. This was the precise holding of the district court.  Appellees cite Northwestern State Bank v. Foss, 197 N.W.2d 662, 666 (Minn. 1972), which observes that "once an available remedy is taken to its conclusion, the party cannot thereafter assert a new theory to enhance recovery."  We do not dispute the viability of this position; however, we are not convinced of its application in this instance.

The district court found that although the state court dismissed the counterclaim suit without prejudice, the Dissenters should have filed a motion to stay the valuation suit until the fraud action had been litigated.  It is tenuous at best for ASI to rest its argument on what the Dissenters hypothetically could have done when ASI presents nothing that suggests a motion to stay would have been granted by the state district court had the Dissenters chosen to bring it.  Furthermore, it was the state district court that found the fraud proceeding to be outside the scope of the limited appraisal proceeding and dismissed the fraud counterclaim without prejudice.  Obviously, if the court had deemed it appropriate to first pursue the fraud action, it could have ordered

a stay of the valuation suit; however, since the two suits were found not to involve the same issues or to be inconsistent with one another, the state court simply bifurcated the claims, stated its jurisdiction was limited in the valuation suit, and proceeded accordingly.[10]  We emphasize that although the present fraud suit has now been removed to federal court, it nevertheless is governed by Minnesota law.  As we have pointed out, both Judge Howard of the state district court and the Minnesota Court of Appeals in Sharecom II, recognized that under Minnesota law an action for common law fraud is available to the Dissenters notwithstanding the completion of the appraisal proceeding.[11]  Hence, contrary to the federal district court's holding, we are not

---

[10]Applying Minnesota law, Judge Howard stated: "[T]he facts involved in resolving each action are distinctly different, and the inquiry involved in recession [sic] of the merger is beyond the scope of the appraisal action.  The two actions are only tangentially related and do not involve the same parties nor the same facts." (Order and Mem. at 16 (Feb. 24, 1993).)

[11]After the appraisal judgment was satisfied, the Dissenters sought to reopen the judgment on the ground of fraud.  Judge Howard granted the reopening.  However, on appeal the Minnesota Court of Appeals said that the state district court lacked jurisdiction to reopen the appraisal judgment on fraud because the judgment had been satisfied.  Significantly, however, the court averred that the Dissenters could still bring a separate common law fraud suit (which they have now done).  The court stated:

> To affirm, as respondents urge, we would have to carve out an additional exception to the Dorso rule that a satisfied judgment may be vacated for fraud.  We decline to do so.  Although we recognize the seriousness of fraud, the need for such an exception is negated because respondents have another available remedy--they may bring a separate common law fraud action.  For a common law fraud action, a party must prove (1) a false representation of a material fact that is susceptible of knowledge, (2) made with knowledge that it is false or made as if it is based on the person's own knowledge without knowing if it is true or false, (3) made with the intention of inducing another to act in reliance, and (4) causing the other party to act in reliance to its pecuniary damage.  Burns v. Valene, 298 Minn. 257, 261, 214 N.W.2d 686, 689 (1974).

convinced that the Dissenters were required to secure a stay in order to preserve their fraud action.

In JCA Partnership v. Wenzel Plumbing & Heating, Inc., 978 F.2d 1056 (8th Cir. 1992), this court refused to apply the election of remedies doctrine to a breach of contract claim that was brought following a settlement in a fraudulent conveyance proceeding. The appellant, a foreclosed-upon mortgagor/vendee, sued its mortgagee for fraudulent conveyance, claiming the mortgagee purchased the foreclosed property at the sheriff's sale at an unreasonably low price. Before a settlement was finalized, the appellant sued for breach of contract based on the vendor's failure to deliver possession of the property at issue after the appellant cured its default. This court rejected the application of election of remedies, stating that the two actions dealt with separate and distinct wrongs and, moreover, the vendor was not a party to the fraudulent conveyance action. Thus, the two actions addressed separate wrongs and involved separate parties, making the doctrine of election of remedies altogether inapplicable. See JCA, 978 F.2d at 1061.

We feel the case at bar is similar to JCA. In the valuation proceeding, the wrong to be addressed was the undervaluation of Corporation stock as of May 8, 1992. Here in the fraud proceeding, on the other hand, the wrong to be addressed is the alleged scheme by ASI to illegally gain control of all of the Corporation's stock, force out all other shareholders, sell the Corporation at a huge profit, and defraud the Dissenters and the state district and appellate courts. Thus, the election of remedies doctrine is not implicated, as its purpose is to prevent double recovery on the same wrong. Furthermore, only the Corporation was a party to the valuation proceeding. Simon, Weinert, and King were not named parties in that action. For all these reasons, the election of remedies doctrine is not applicable under these facts.

---

See American Sharecom, Inc. v. LDB Int'l Corp., 553 N.W.2d 433, 434 (Minn. Ct. App. 1996) (Sharecom II).

2. Duplicitous Damages

ASI also seeks to invoke the election of remedies doctrine by arguing that the damages sought in this fraud action are duplicitous of damages awarded in the valuation proceeding. In determining damages in fraud and misrepresentation actions, Minnesota follows the out-of-pocket rule. See B.F. Goodrich Co. v. Mesabi Tire Co., 430 N.W.2d 180, 182 (Minn. 1988). The out-of-pocket rule calculates damages as "the difference between the actual value of the property received and the price paid for the property, along with any special damages naturally and proximately caused by the fraud prior to its discovery . . . ." Mesabi, 430 N.W.2d at 182. See also Commercial Property Investments, Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 647 (8th Cir.1995) (defining the out-of-pocket rule as "'the difference between what the defrauded party paid and what he or she actually received, together with other damages proximately caused by the fraud . . . .'") (quoting Nave v. Dovolos, 395 N.W.2d 393, 398 n.1 (Minn. Ct. App. 1986)). ASI opines that the application of the out-of-pocket rule to this case leads to the conclusion that the Dissenters have already recovered any damages resulting from the alleged fraud through the appraisal judgment. It thus argues that allowing the fraud claim to proceed would result in a duplicitous recovery.

Minnesota courts have taken a broad approach to the concept of out-of-pocket damages, upholding the recovery of consequential damages proximately caused by the fraud or misrepresentation. See Commercial Property, 61 F.3d at 647. Furthermore, in Estate of Jones v. Kvamme, 449 N.W.2d 428 (Minn. 1989), the Minnesota Supreme Court recognized that there are situations where an unyielding application of the out-of-pocket rule fails to fully compensate victims of fraud. A prime example of this, albeit from another circuit, is Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965). The plaintiffs in Janigan were former stockholders who sued the corporation's president in connection with an alleged misrepresentation the president made regarding material changes in the affairs of the company. The shareholders claimed the president unlawfully purchased virtually all of the company's outstanding stock and sold it two years later at a

-13-

tremendous profit. In discussing the appropriate damages, the court made a distinction between cases where one is fraudulently induced to buy and those where one is fraudulently induced to convey property. In the former case, the court found that damages are to be calculated simply as the difference between the value of the property at sale and the price paid for it, plus interest and other damages legitimately caused by the defendant's conduct. "[T]he expected fruits of an unrealized speculation" are not included as damages for the fraudulent inducement to buy, however. Janigan, 344 F.2d at 786 (citation omitted). Alternatively,

> if the property is not bought from, but sold to the fraudulent party, future accretions not foreseeable at the time of the transfer even on the true facts, and hence speculative, are subject to another factor, viz., that they accrued to the fraudulent party. It may, as in the case at bar, be entirely speculative whether, had plaintiffs not sold, the series of fortunate occurrences would have happened in the same way, and to their same profit. However, there can be no speculation but that the defendant actually made the profit and, once it is found that he acquired the property by fraud, that the profit was the proximate consequence of the fraud, whether foreseeable or not. It is more appropriate to give the defrauded party the benefit even of windfalls than to let the fraudulent party keep them.

Id. The court relied on principles of "simple equity" to fashion a remedy for fraud that went beyond simple out-of-pocket loss. Id. It is altogether possible that the district court could follow the same course of action in the case at bar. While it may be too late for the Dissenters to rescind the merger (given the fact that the Dissenters have not held ASI stock for several years), it is not too late for them to seek consequential damages proximately caused by ASI's allegedly fraudulent activities. Indeed, the interpretation of the out-of-pocket rule in Minnesota expressly permits such damages.

We note that the principle underlying the election of remedies doctrine is the prevention of prejudice to the defendant. See Medcom, 984 F.2d at 229. In fact, this

-14-

court has refused to apply the doctrine in situations where the defendant has not been substantially prejudiced.  See Lear, 798 F.2d at 1134.  Here, it is difficult to see how ASI is prejudiced by the Dissenters' assertion of their common law fraud claims.  It already paid the Dissenters the value of their stock, which it would have had to do if the fraud claims were brought first (assuming they were successful).  Further, ASI has known from the inception of this dispute that the Dissenters' alleged fraudulent conduct on the part of the controlling shareholders to effectuate the merger.[12]  Thus, the prevention of prejudice to ASI is not a serious consideration in this case.

Additionally, the Dissenters note that § 302A.471(4), the Minnesota statute regulating Dissenters' rights, provides that dissenting shareholders "do not have a right at law or in equity to have a corporate action . . . set aside or rescinded, except when the corporate action is fraudulent with regard to the complaining shareholder or the corporation."  MINN. STAT. § 302A.471(4) (emphasis added).  In Sifferle v. Micom Corp., 384 N.W.2d 503, 506 (Minn. Ct. App. 1986), the Minnesota Court of Appeals stated that "the appraisal right of a frozen-out shareholder is his exclusive remedy

---

[12]In Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967), (Lay, J.), cert. denied, 390 U.S. 951 (1968), this court stated that, especially in a case where the disputed property is a fungible of fluctuating value, "a party upon notice of the grounds of recission must immediately elect to affirm or deny the contract."  Myzel, 386 F.2d at 740-41 n.15.  The court explained that the choice must be made immediately in order to prevent said party from delaying its decision "without notification to the wrongdoer," waiting for the market to go up or down, and thereafter choosing to rescind or affirm accordingly.  Id. at 741 n.15.

In this case, it was ASI that sought to affirm the merger, as was its statutory right.  The Dissenters sought to counterclaim for rescission, but they were denied the forum by motion of ASI and the ruling of the state district judge.  As such, ASI certainly had notice of the Dissenters' allegations of fraud.  It cannot be argued that the Dissenters attempted to dupe ASI by sitting on their fraud claims until they could reap the most economic benefit, when ASI was fully aware of the impending claims almost from the start.

unless the merger is 'fraudulent' to him or the corporation." Moreover, the court found that "[i]t is generally held that there is no bar to instituting an appraisal proceeding in addition to challenging the merger in an equitable proceeding on the grounds of fraud." Sifferle, 384 N.W.2d at 509. The Dissenters rely on this language as support for the propriety of pursuing their present fraud action. ASI states that this language permits nothing more than the simultaneous assertion of inconsistent claims until the claimant recovers on one or the other. It urges, however, as we have previously indicated, once the appraisal suit is completed and the judgment satisfied, there can be no further recovery for fraud. At least as to the common law action for fraud presently before us, this position is directly refuted by the Court of Appeals' statements in Sharecom II, 553 N.W.2d 433.

Both sides rely on Cede & Co. v. Technicolor, Inc., 542 A.2d 1182 (Del. 1988), for support. In that case, Cede & Co. dissented from a cash-out merger of the minority shareholders of Technicolor. Cede & Co. first brought an appraisal action and later filed a fraud action. Similar to the present case, Cede & Co. brought the subsequent fraud action only after unearthing evidence of wrongdoing in connection with the merger, which was determined during the course of appraisal discovery. Technicolor moved to dismiss the fraud claim and the trial court ruled that the claimant would have to choose between the two suits after completing discovery on both.

The Delaware Supreme Court reversed, stating that the actions should be consolidated for trial and, if Cede & Co. was successful, the court could determine and award the appropriate remedies at that time. The court stated that the election of remedies had no application in the case, as Cede & Co.'s alternative causes were not inconsistent claims for relief based on the same facts. The Delaware court qualified its holding, however, stating:

> During the consolidated proceeding, if it is determined that the merger
> should not have occurred due to fraud, breach of fiduciary duty, or other

wrongdoing on the part of the defendants, then [Cede & Co.'s] appraisal action will be rendered moot and [Cede & Co.] will be entitled to receive rescissory damages. <u>If such wrongdoing on the part of the defendants is not found, and the merger was properly authorized, then [Cede & Co.] will be entitled to collect the fair value of its Technicolor shares pursuant to statutory appraisal and its fraud action will be dismissed</u>. Under either scenario, [Cede & Co.] will be limited to a single recovery judgment.

<u>Cede</u>, 542 A.2d at 1191 (emphasis added).

In the present case, the Dissenters argue that <u>Cede</u> supports their position because it shows that an appraisal action is not the exclusive remedy of frozen-out shareholders. ASI, in turn, argues that this case substantiates the argument that the appraisal proceeding trumps the fraud action where the former comes to judgment before the latter. We disagree with ASI on this point, and we do not feel that the above-quoted language compels us to find otherwise. The argument that a successful fraud action moots a subsequent appraisal proceeding does not necessarily mean a successful appraisal proceeding moots a subsequent fraud action. To restate, the plaintiffs would be entitled to at least the fair value of their shares regardless of the form of recovery, assuming they were successful. To allow the claimants to collect on the fair value in the fraud action and then again in the appraisal action would be double recovery, since the only recovery available in an appraisal proceeding is the fair value of the shares. The opposite is not necessarily the case, however, as a successful fraud action may entitle the claimant to more than fair value under Minnesota's consequential damages provision of the out-of-pocket rule. Hence, one could potentially recover the fair value in the appraisal proceeding, bring a fraud claim, and recover fair value plus consequential damages. As long as the court offsets the previously awarded fair value, there can be no double recovery.

The language in <u>Cede</u> is based on the assumption that the existence of fraud has been considered and rejected, thereby necessitating the dismissal of the fraud action.

We do not read this language as saying once an appraisal action is brought and won, a fraud action is necessarily dismissed. Rather, the express language provides that the Dissenters are still entitled to an appraisal proceeding once a fraud action is proven untenable. In this case, we do not know if fraud is out of the picture because the issue has never been tried; hence, the language in Cede does not support the assertion that the appraisal necessarily moots the fraud action in this situation.

Finally, we urge ASI to keep in mind that any and all of the Dissenters' alleged damages must be sufficiently connected to ASI's behavior so as to pass the requirements of causation under the law. Our decision is not intended to speak to the issue of causation, which is a factual question beyond the scope of this court's review. See Peter v. Jax, 187 F.3d 829, 834 (8th Cir. 1999). The issue facing this court is whether the election of remedies doctrine bars the Dissenters' fraud claims, and we find it does not.

## B. Collateral Estoppel

The district court also found the Dissenters' claims barred by collateral estoppel, in that the Dissenters had a "full and fair opportunity" to stay the valuation proceeding and litigate the fraud claim but voluntarily chose not to do so. We cannot accept this analysis. First of all, the federal district court relied solely on the following four elements of collateral estoppel as stated in Bechtold v. City of Rosemount, 104 F.3d 1062, 1066-67 (8th Cir. 1997):

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

(citing Willems v. Commissioner of Pub. Safety, 333 N.W.2d 619, 621 (Minn. 1983)). Implicit within this test, however, is the universal recognition that collateral estoppel,

which is perhaps better understood as issue preclusion, does not apply in any case unless the disputed issue has actually been litigated and decided. See Schlichte v. Kielan, 599 N.W.2d 185, 188 (Minn. Ct. App. 1999). See also Williamson v. Guentzel, 584 N.W.2d 20, 23 (Minn. Ct. App. 1998) ("The principle of collateral estoppel (or issue preclusion) prevents the relitigation of an issue identical to one actually litigated in a previous action." (emphasis added)); Haavisto v. Perpich, 520 N.W.2d 727, 731 (Minn. 1994) ("The doctrine of collateral estoppel mandates that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits, based on a different cause of action, involving a party to the prior litigation.'" (citation omitted) (emphasis added)); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (emphasis added)); G.A.W. v. D.M.W., 596 N.W.2d 284, 287 (Minn. Ct. App. 1999) (refusing to apply collateral estoppel to interspousal tort proceeding on basis that stipulated divorce settlement between spouses took allegedly tortious actions into consideration; "the fact that an issue is the subject of stipulation between the parties does not necessarily mean the issue has been litigated."). This court perhaps best summarized the application of collateral estoppel in S.E.C. v. Ridenour, 913 F.2d 515, 518 (8th Cir. 1990):

> The doctrine of collateral estoppel applies only when the issue sought to be precluded is the same as that involved in the prior litigation, the issue was actually litigated and the party sought to be estopped was given a full and fair opportunity to be heard on the issue, and determination of the issue was essential to a valid and final judgment.

(emphasis added). The doctrine is based on the contention that the judgment in a prior action precludes the re-litigation of issues decided in the first action and necessary to its outcome. See Lane v. Peterson, 899 F.2d 737, 741 (8th Cir. 1990).

-19-

It is indisputable that the issue of fraud was not actually litigated at the appraisal proceeding stage, as the state court specifically dismissed the Dissenters' fraud claims without prejudice. To the extent that stock value was a common issue to the proceedings, the inquiries encompass different time periods and are, thus, not identical. The federal district court nonetheless held that the Dissenters were collaterally estopped because they were given a full and fair opportunity to have their fraud claims heard in the first suit. The district court found that the Dissenters had that opportunity by reasoning that they should have moved for a stay of the appraisal proceeding and tried the fraud issue. We reject this approach.

The hypothetical option of moving for a stay, which was suggested to the Dissenters by neither the court in the valuation proceeding nor the state appellate court in Sharecom II, hardly serves as a sufficient substitute for the actual litigation of the fraud claims. Our examination of the "full and fair opportunity" requirement indicates that this prong of the rule prevents the collateral estoppel of a party who was not given a full and fair opportunity to be heard on an issue that was actually adjudicated during prior litigation. See generally, Colonial Ins. Co. v. Anderson, 588 N.W.2d 531, 533 (Minn. Ct. App. 1999) (finding collateral estoppel does not apply because appellant's brain damage and the absence of a key witness at trial prevented appellant from receiving a full and fair opportunity to be heard); AFSCME Council No. 14 v. Washington County Bd. of Commissioners, 527 N.W.2d 127, 130-31 (Minn. Ct. App. 1995) (finding no collateral estoppel bar because the party was denied a full and fair opportunity to be heard; the party was given only three days notice of prior hearing, no memoranda were prepared, no findings or conclusions issued, and the issue was not "fully litigated"); Haavisto, 520 N.W.2d at 732 (noting that because the allegedly estopped party was dismissed from the prior action without prejudice and without being given a full and fair opportunity to be heard on the issue at hand, collateral estoppel did not apply); Clapper v. Budget Oil Co., 437 N.W.2d 722, 726 (Minn. Ct. App. 1989) (finding that an administrative hearing before a department referee, where the rules of evidence are not followed, legal representation is subject to the department's oversight,

and the emphasis of the hearing is a speedy resolution "does not constitute a full and fair opportunity to be heard for purposes of applying collateral estoppel to the resulting determination.").

We do not view the "full and fair opportunity" requirement as a method for the party asserting estoppel to avoid the actual litigation rule. This rule is that the party against whom estoppel is asserted may use the "full and fair opportunity" requirement to rebut allegations of estoppel. By showing it did not have a full and fair opportunity to be heard on the adjudicated issue, the party avoids the application of collateral estoppel. The rule is there to protect the allegedly estopped party, not to punish it.

Furthermore, it is clear from the language quoted by the federal district court that actual litigation is a prerequisite to the consideration of whether there existed a full and fair opportunity to be heard. The requirement states that the allegedly estopped party must be "given a full and fair opportunity to be heard <u>on the adjudicated issue</u>." <u>Bechtold</u>, 104 F.3d at 1067 (emphasis added). Hence, by definition, the issue at hand must have been actually adjudicated <u>before</u> the full and fair opportunity prong comes into play.[13]

Finally, we recognize that the Dissenters' failure to appeal Judge Howard's dismissal of the fraud counterclaim could give rise to claim preclusion if the counterclaim is properly deemed compulsory. Judge Howard specifically found that the fraud counterclaim was not compulsory, using the "logical relationship" standard and citing <u>Fox Chemical Co. v. Amsoil, Inc.</u>, 445 F.Supp. 1355 (D. Minn. 1978).

---

[13]It is important for courts to distinguish the concept of collateral estoppel (issue preclusion) from that of res judicata (claim preclusion). The latter explicitly applies to claims previously litigated as well as those which <u>might</u> have been litigated in the previous action. See <u>G.A.W.</u>, 596 N.W.2d at 287. The former applies only to issues <u>actually</u> litigated. See <u>Schlichte v. Kielan</u>, 599 N.W.2d 185, 188 (Minn. Ct. App. 1999).

Minnesota Rule of Civil Procedure 13.01 defines a compulsory counterclaim as a claim that "arises out of the transaction that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction . . . ." MINN. R. CIV. P. 13.01 (2000). In Fox Chemical, the federal district court found the claimant's libel counterclaim to "stem from the same aggregate of operative facts" as a previously asserted Lanham Act claim, as both causes of action concerned allegedly false representations by the defendant about its product. Fox Chemical, 445 F.Supp. at 1361. In the case at bar, the appraisal proceeding dealt with a limited transaction, i.e., the exchange of money for stock on May 8, 1992. The method employed by the Corporation to secure the funds to purchase the stock was not a concern in that proceeding. Thus, we agree with Judge Howard that the fraud counterclaim was not compulsory and it did not "arise out of the transaction" of the appraisal proceeding nor did it "stem from the same aggregate of operative facts."

## C. Collateral Attack

The federal district court found that because all of the Dissenters' alleged fraud damages were tied to the issue of stock value, which had been litigated to determination in the valuation proceeding, the fraud claims improperly collaterally attacked the earlier valuation judgment. Because we do not understand the Dissenters' present fraud claims to challenge the outcome of the appraisal proceeding, we reject this contention.

An action with an independent purpose and contemplative of another form of relief that depends on the overruling of a prior judgment is a collateral attack. See Elbow Lake Cooperative Grain Co. v. Commodity Credit Corp., 144 F.Supp. 54, 61 (D.Minn. 1956). It is well-settled in Minnesota that a facially valid judgment is not subject to collateral attack. See Fidelity and Deposit Co. v. Riopelle, 216 N.W.2d 674, 677 (Minn. 1974). See also Nussbaumer v. Fetrow, 556 N.W.2d 595, 599 (Minn. Ct. App. 1996). When a judgment is alleged to be simply erroneous or attacked on the basis of anomalies unrelated to the court's jurisdiction, collateral attack is not an option.

See Nussbaumer, 556 N.W.2d at 599. The collateral attack doctrine encourages finality in judgments and justifies reliance on orders of the court. See id.

In Adams v. Resolution Trust Corp., 927 F.2d 348 (8th Cir. 1991), this court affirmed summary judgment on the ground that the claimant sought to collaterally attack a previous decision by the Federal Home Loan Bank Board ("Bank Board"). The claimant, a purchaser of subordinated debenture securities from a subsequently insolvent savings and loan association (S&L), sought to collect on theories of securities fraud and common law fraud following a determination by the Bank Board that the S&L was insolvent and could not generate sufficient funds to satisfy the claims of subordinated debt and equity interests. This court found the subsequent fraud claims to be an impermissible collateral attack on the Bank Board's prior determination. Similarly, in Kelly v. Kelly, 229 N.W.2d 526 (Minn. 1975), the general guardian of a ward sued the former guardian's estate, alleging that the former guardian had improperly purchased his ward's foreclosed property after allowing the redemption period to lapse. In a previous action, the probate court had granted the former guardian's motion to let the redemption period lapse and, in an amended order, permitted the former guardian to purchase the property. The basis of the new guardian's action was that the purchase itself was fraudulent, not that the probate court's order permitting the purchase was procured by fraud. The court found the action to be a wrongful collateral attack, "for the essential requirement of allegations that the order itself was procured by fraud [had] not been satisfied." Kelly, 229 N.W.2d at 529.

The case at bar is distinguishable. The claims of fraud arising during the valuation proceeding clearly fall under the above-quoted language in Kelly, as they indeed allege that the valuation order was procured by fraud.[14] As the Minnesota Court

_____

[14]It is important to keep in mind that, although the claims allege fraudulent procurement, the Dissenters do not allege it with the purpose of setting aside the

of Appeals stated in Sharecom II, the Dissenters' only available remedy, in light of the satisfaction of the valuation judgment, is a common law fraud action. We therefore hold the doctrine of collateral attack does not bar the claims of fraud arising during the appraisal proceeding.

The fraud claims directed towards pre-merger activity also are not intended to undermine Judge Howard's valuation of the shares on the date of the merger. Rather, the Dissenters seek to show that they were otherwise harmed prior to the merger outside of the initial (pre-appraisal) undervaluation by the Corporation. These claims say nothing about the accuracy of the valuation as of May 8, 1992; rather, they only seek damages for actions by ASI that they allege prevented them from subsequently realizing a greater profit on their stock. Thus, it is equally improper to dismiss these claims on the basis of collateral attack.

Some might argue that the Dissenters' satisfaction of the valuation judgment constitutes an accord and satisfaction with regard to the fraud claims. "Under Minnesota law, an accord and satisfaction may occur 'when a creditor accepts part payment of an unliquidated debt which the debtor tenders in full satisfaction of the debt . . . and the creditor accepts that offer.'" Northwest Airlines, Inc. v. Astraea Aviation Services, Inc., 111 F.3d 1386, 1391 (8th Cir. 1997) (quoting Don Kral Inc. v. Lindstrom, 286 Minn. 37, 173 N.W.2d 921, 923 (1970)). Satisfaction of the debt can be expressed or implied, but the circumstances must clearly indicate the parties' intent. See Northwest Airlines, 111 F.3d at 1391. Arguments of subjective intent do not trump plain language of objective intent. See id. at 1391-92.

Here, nothing in the satisfaction of the earlier judgment evinces the Dissenters' intent to accept the valuation judgment as full compensation for that claim and any

valuation judgment (although that might have been their original intention when they moved the state court to reopen the valuation proceeding).

others that may arise. The Dissenters served ASI with a complaint in the fraud action prior to receiving Judge Howard's ruling and six months before the judgment was satisfied. If the Dissenters intended to work an accord and satisfaction of the fraud claims, their intent to do so would likely have been clearly presented in the Satisfaction of Judgment. There is no such suggestion of deserting the fraud claims, of which all parties were fully aware from nearly the inception of the dispute. As such, we are of the opinion that the facts and circumstances show neither an express nor an implied intent to accept the valuation judgment as a final resolution of the pending fraud claims. Accordingly, we reverse and remand the common law fraud claims.

## D. RICO

The lower court dismissed the Dissenters' RICO claim on the same theory as the common law fraud claims. Because we reject this analysis, we cannot affirm the district court's application of it to the RICO claim. However, in an attempt to dispose of the RICO claim on other grounds, ASI argues that the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67; § 107, 109 Stat. 737, 758 (1995), bars the Dissenters' claim. ASI brought this argument before the district court in its motion for summary judgment, but the court declined to reach the merits of the argument since it found the RICO claims barred on other grounds. Hence, we abstain from considering the applicability of the PSLRA to this case, as the district court never passed upon the issue. See Anderson v. Unisys Corp., 52 F.3d 764, 765 (8th Cir. 1995) ("[B]ecause the district court never passed upon this issue, we decline to consider it here."); Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 395 (8th Cir. 1994) ("Ordinarily, we do not decide issues that the district court did not adjudicate."); North Dakota v. Merchants Nat'l Bank and Trust Co., 579 F.2d 1112, 1115 (8th Cir. 1978) ("Generally we do not decide issues that were not passed upon by the trial court."). The application of the PSLRA remains an issue for the district court to decide, should it see fit to so do. We reverse and remand the RICO claim on the same basis as the common law fraud claims.

**E. State Statutory Claims**

The Dissenters also appeal the magistrate court's denial of their timely motion to file a Third Amended Complaint adding two state law causes of action. The court denied the motion on the same basis as the dismissal of the fraud and RICO claims, stating that the claims were futile because "[p]laintiffs have been paid the judicially determined value of the stock, and cannot now claim the stock was stolen." (Order at 4 (Mar. 5, 1998).) Because we reject this line of reasoning, we reverse the court's denial of the Dissenters' motion.

A trial court's decision whether to permit an amendment of the pleadings is reviewed by this court for an abuse of discretion. See Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989). Federal Rule of Civil Procedure 15(a) governs a party's right to amend its pleadings and the rule declares that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a) (1999). Given the courts' liberal viewpoint towards leave to amend, it should normally be granted absent good reason for a denial. See Thompson-El, 876 F.2d at 67. The classic "good reasons" for rejecting an amendment are: "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment . . . ." Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Generally speaking, reviewing courts have found an abuse of discretion in cases where the district court denied amendments based on facts similar to those comprising the original complaint. See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998) (citing Sanders v. Clemco Indus., 823 F.2d 214, 216-17 (8th Cir. 1987); Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981)). The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party. See Buder, 644 F.2d at 694. A liberal amendment policy, however, is in no way an absolute right to amend. See Thompson-El, 876 F.2d.

at 67. Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend. See id. at 68 (upholding lower court's refusal of motion to amend out of concern for extra discovery requirements and attendant delay).

The Dissenters seek to add claims under two Minnesota statutes: § 609.53 Receiving stolen property; and § 332.51 Civil liability for theft.[15] While we admit that

---

[15]These statutes state in relevant part:

609.53 RECEIVING STOLEN PROPERTY
    Subdivision 1. Penalty. Except as otherwise provided in section 609.526, any person who receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, knowing or having reason to know the property was stolen or obtained by robbery, may be sentenced in accordance with the provisions of section 609.52, subdivision 3.
        . . . .

    Subd. 4. Civil action; treble damages. Any person who has been injured by a violation of subdivision 1 or section 609.526 may bring an action for three times the amount of actual damages sustained by the plaintiff or $1,500, whichever is greater, and the costs of suit and reasonable attorney's fees.

MINN. STAT. § 609.53 (1998).

332.51 CIVIL LIABILITY FOR THEFT
    Subdivision 1. Liability for theft of property. A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater. . . .

    . . . .

-27-

these claims are based on a legal theory heretofore absent from these proceedings (i.e., theft), we nonetheless find that the lower court's refusal to permit their addition amounted to an abuse of discretion. As we have stated throughout this opinion, we reject the contention that the Dissenters' action is barred by the doctrines of election of remedies, collateral estoppel, or collateral attack. Since we find these reasons unacceptable, that leaves the lower court without a viable reason for its denial. The state law claims are based on the same set of facts as the common law fraud and RICO claims, and the motion for leave to amend was timely filed, thereby invoking the liberal amendment policy of Fed. R. Civ. P. 15(a). Finally, ASI does not assert that it would be prejudiced by the inclusion of these two claims. Rather, ASI's brief concentrates on the legal insufficiency of the statutory claims. This court stated in <u>Buder</u> that, in deciding whether to permit a proffered amendment, a court should not consider the likelihood of success unless the claim is "clearly frivolous." <u>Buder</u>, 644 F.2d at 695. As we are unwilling to make any such determination of frivolity in this situation, the state statutory claims must stand. Thus, we reverse and remand for the addition of these two claims.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of partial dismissal and summary judgment, and we REMAND for proceedings consistent with this decision.

---

Subd. 4. Criminal action. The filing of a criminal complaint, conviction, or guilty plea is not a prerequisite to liability under this section. Payment or nonpayment may not be used as evidence in a criminal action.

MINN. STAT. § 332.51 (1998).

A true copy.

Attest:

　　　　CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.