## MODERN LIFE INSURANCE COMPANY OF MINNESOTA v. KAY TODD.[1]

July 3, 1931.

No. 28,535.

*Kerr, Nelson, O'Neill, Mohan & Dudley, Morphy, Bradford, Cummins & Cummins,* and *Erland Lind,* for appellant.

*William C. Green, R. H. deLambert, Thomas C. Daggett,* and *Doherty, Rumble, Bunn & Butler,* for respondent.

[1]Reported in 237 N. W. 686.

STONE, J.

Appeal by plaintiff from an order overruling a demurrer to portions of the answer.

Plaintiff is a Minnesota corporation licensed October 19, 1921, to transact a general old line life insurance business, in which it has been engaged ever since. It seeks recovery of moneys which it has paid defendant under the questioned contracts set up in the complaint. Plaintiff's first board of directors consisted of Honorable J. A. A. Burnquist, Jason L. Lewis, John G. Abels, Charles E. Cone, and defendant, who is a member of our bar. From August 1 to November 1, 1921, the board was enlarged by four additional directors. From the beginning defendant has continued a director except for the period from September 12, 1921, to October 5, 1922. During all the time to August 14, 1930, he was general counsel of plaintiff and is alleged to have "represented" it in all legal matters, including those now involved. He was first vice president from February 7, 1924, to February 13, 1928; president from February 13, 1928, to August 14, 1930; and a member of the executive committee from August 1, 1921, to August 14, 1930.

August 1, 1921, plaintiff's six directors authorized, and plaintiff entered into, a contract with Cone and Abels, two of their number, making them the exclusive agents of plaintiff to write insurance, with commissions out of first year's premiums ranging from five per centum on single premium policies to 80 per centum on 20-payment and ordinary life contracts. They were promised in addition commissions on renewal premiums ranging from five per centum on ten-year endowment policies to 15 on 20-payment and ordinary life contracts. As to two classes of policies, there was a reduction of commissions after the first year, and commissions terminated with the tenth year. Commissions to accrue were expressly made subject to assignment. From now on we shall refer to this as the general agency contract.

Under date of October 15, 1921, another contract was entered into between Cone and Abels and defendant. Notwithstanding its date, it recited that the general agency contract had been entered into on the same day. It further recited that defendant had ren-

dered Cone and Abels "professional services covering a period of approximately one year, prior to the date hereof, in connection with" the organization of plaintiff; that they would require additional legal services, which defendant promised to perform, particularly agreeing "to properly advise them as to their legal rights as such general agents." The contract obligated Cone and Abels to pay defendant five per centum of first year's premiums and three-fourths of one per centum of renewal premiums received or collected by them under their general agency contract with plaintiff. The agreement empowered plaintiff to pay defendant directly "the amount or amounts hereby assigned and transferred."

Contemporaneously with this contract, it is alleged, Cone and Abels entered into a similar one with Mr. Burnquist. It recited the latter's having rendered them valuable services and assistance in procuring preliminary applications for insurance and their desire for a continuance of such assistance. It assigned to Mr. Burnquist stated shares of all premiums collected by Cone and Abels under the general agency contract.

The three contracts show an arrangement whereby four of the then six directors of plaintiff contracted to put all its business in charge of Cone and Abels, two of their number, as general agents, their commissions to be shared by defendant and Mr. Burnquist, also directors. The complaint avers that defendant, representing plaintiff as its legal adviser, negotiated the general agency contract, and that in negotiation it was first agreed that the commissions should be much less than the percentages finally fixed; but "that before said contract was finally concluded, it was secretly, and without the knowledge of other officers and directors of plaintiff, agreed between defendant and said Cone and Abels that said commissions should be increased to the amounts inserted in said contract, in order that defendant and another might" share in the commissions.

The complaint goes on to allege that June 27, 1922, the general agency contract was terminated, the settlement obligating plaintiff to pay Cone and Abels commissions aggregating $80,000 and to assume all their obligations to defendant and Mr. Burnquist.

The complaint charges defendant with a "purpose to financially benefit himself at the expense of his client," plaintiff, and alleges that he advised plaintiff that, notwithstanding the cancelation of the Cone and Abels contract, defendant was entitled to be paid his share of the commissions thereunder; that plaintiff was obligated to pay him such commissions not only "for past business, but on future business during the full original life period" of the general agency contract. Such advice is alleged to have been erroneously and wrongfully given and that plaintiff relied and acted upon that advice in making the large payments consequent upon its being followed.

May 12, 1924, plaintiff and defendant entered into a so-called "commutation agreement." It was in stated modification of the contractual status then considered to exist and presently will receive further consideration. The complaint charges that plaintiff entered into it without consideration and in reliance upon false and misleading legal advice of defendant as to the obligations imposed upon plaintiff by preceding contracts. It is upon this contract that defendant mainly relies. Admitting the contract, he denies all else that plaintiff pleads concerning it. With the resulting fact issues we are not now concerned.

The total payments to defendant by plaintiff as a result of the transactions set up and attacked by the complaint aggregated $62,396.41. Demand upon defendant for repayment and his refusal are suitably alleged. A second cause of action for a smaller amount is not involved in the present inquiry.

The answer admits defendant's official and professional connection with plaintiff, the making of the several contracts, and the payments to him pursuant thereto, generally as alleged in the complaint. As to all such payments before October 14, 1924, aggregating $20,357.90, the statute of limitations is pleaded. It is then averred that all the contracts were "passed upon, approved and authorized" by plaintiff's board of directors, "composed of competent and disinterested men." Defendant avers that he did not vote on the "question of the approval of the" contracts which canceled the general agency contract and obligated plaintiff to pay Cone

and Abels $40,000 each by way of commuted commissions. He then avers that each and all of the contracts in question "were examined by the Insurance Department of the State of Minnesota and entered into with the full knowledge of the officers of said Department"; that the officers and directors of plaintiff were at all times familiar with all the involved transactions, which are alleged to have been carried on openly and in good faith and without concealment, fraud, or bad faith on part of defendant.

The answer then quotes a lengthy resolution adopted by plaintiff's directors June 4, 1924. It referred to a change of underwriting plan as a result of which, the resolution states, "it has become embarrassing to this company to continue to pay said Todd said commissions as provided in the agreement now in force between him and the said Cone and Abels and assumed by this company." It then recited that defendant had performed "continuous and extremely valuable services to this company ever since the date of the granting of its charter," for which he had claimed no fees or compensation other than the commissions he had received, "which commissions he would have been entitled to receive from and through the said Cone and Abels by reason of his said contracts, without the performance of any of the services herein mentioned." After much other language laudatory of defendant and his services, the resolution concluded by tendering the thanks of the directors to defendant "for his generosity in voluntarily renouncing and relinquishing * * * his commission contract and acceptance in lieu thereof" the commutation agreement of May 12, 1924. That contract recited the company's assumption of the obligations of Cone and Abels to defendant, its desire to modify the method of payment of defendant's commissions and to cancel its then obligations to him "by assuming those herein contained." Defendant's old commission arrangement was annulled, and there was substituted this new one of May 12, 1924. Plaintiff assigned to defendant two and one-half per centum of all renewal premiums on certain business, three per centum of renewal premiums on certain other business, and five per centum on still another class.

The answer then avers that all payments made to defendant by plaintiff were made with the full knowledge of the directors, not only of the payments but also of the purposes for which and the circumstances under which they were made, for a period of five and one-half years "without protest or claim of any lack of right on the part of the defendant to receive and retain them." The pleader's conclusion is that plaintiff has ratified and confirmed all the contracts in question and the payments pursuant thereto. In another paragraph defendant pleads that, by reason of plaintiff's acquiescence in all of the challenged contracts and its performance thereof without question for over eight years, it has been guilty of laches barring it from any recovery against defendant, additional circumstances being set up to reënforce that claim and a related one of estoppel. Defendant denies any misconduct and avers that he at all times fairly and fully protected the rights of plaintiff.

For a first counterclaim the answer asserts a cause of action for an amount, on information and belief alleged to exceed $10,000, claimed as a balance due under the contracts in question.

The demurrer attacks separately, for general insufficiency, several enumerated paragraphs of the answer and questions that pleading generally upon the ground that it does not state facts sufficient to constitute a defense. We consider it a general demurrer to the whole answer, other than a counterclaim which seeks to charge plaintiff on quantum meruit for services rendered.

■ The answer adequately pleads the statute of limitations. In addition to the specific averments raising this issue, it carries a general denial of all allegations of the complaint not otherwise met. The argument for plaintiff treats the action as sounding in fraud. Taking that view of it, the applicable statute, G. S. 1923 (2 Mason, 1927) § 9191 (6) bars recovery of payments made more than six years before commencement of the action unless the facts constituting fraud, if any, were not discovered "by the aggrieved party" within six years. The complaint (paragraph XIX) does allege that the payments to defendant were made in reliance on what are said to be his "false and erroneous representations and advices."

But it does not claim, expressly or by clear and necessary implication, that the fraud, if any, was not discovered until within six years of the commencement of the action. True, the statute runs only from discovery of fraud or from the time it ought to have been discovered. But the burden is on plaintiff to allege and prove that it did not discover the facts constituting the fraud until within six years before the commencement of the action. Morrill v. Little Falls Mfg. Co. 53 Minn. 371, 55 N. W. 547, 21 L. R. A. 174; Whitcomb v. Wright, 176 Minn. 274, 223 N. W. 294; 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5652. We see no reason therefore why as to payments before October 14, 1924, or whatever other date should be the determinative one, the answer does not adequately plead the statute as a defense.

The argument for plaintiff goes too far in asking us (1) to consider this as a stockholders' action and then (2) assume that some or all of the stockholders did not discover the fraud until within six years before the suit was started. The action is not one by stockholders but by plaintiff in its own right. Were it in fact a stockholders' action, there is no pleading, adequate or otherwise, to suggest failure to discover the alleged fraud until within six years.

Plaintiff's theory is that the general agency contract and the related agreements with Mr. Burnquist and defendant were made at the same time and as parts of the same transaction and all void. Much stressed is the fact that four of the six directors were pecuniarily interested in the three contracts. It is alleged explicitly that the commissions of Cone and Abels were clandestinely increased to enable them to pay a goodly share thereof to defendant, who is charged with having assumed by his arrangement with Cone and Abels a position so incompatible with his duties as director and general counsel of plaintiff as to make the whole arrangement against public policy. But that point we are not at liberty to decide. If it be assumed that plaintiff's position is sound so far as the original contracts are concerned, it remains that they were performed for a considerable period and that finally the general agency contract was formally terminated. Thereafter the contractual status as between plaintiff and defendant was changed, de-

fendant surrendering his supposed rights under the existing arrangement and accepting the substitution of a new contract, authorized by the then board of directors of plaintiff in a manner which cannot be condemned as the case stands now.

We consider the matter as presented by the answer. Its allegations we must take at their face value, both for the facts they present and the legal implications they suggest. If the original arrangement was void as against public policy, it yet gave rise to a situation which, so far as now appears, was not beyond solution by valid contract. The parties were not in pari delicto. (See 3 Williston, Contracts, § 1789, et seq.) Plaintiff, on its own theory, was the innocent one and had claims against defendant susceptible of enforcement by action or discharge by accord and satisfaction or compromise. The new arrangement of May 12, 1924, is properly pleaded as a substitution of a new and valid contract for the preceding ones said to be invalid. As the case is now, the new contract appears to be a defense. How it will stand after the proof is in is another matter.

Even where felony has been done and the criminal liability defies compromise, the civil liability may be settled by contract. State ex rel. Curry v. Wagener, 145 Minn. 377, 177 N. W. 346; 5 R. C. L. 885. Defendant does not now stand on the original contracts of 1921, but upon his new and substituted compact of May, 1924. It remains to be established how or why that contract is not good. Defendant's position is not dependent on the original transactions, which plaintiff attacks as illegal, but upon the subsequent arrangement of 1924. If that be good, defendant "will not be defeated merely because in the course of the business" illegal acts were committed. Disbrow v. Creamery Package Mfg. Co. 110 Minn. 237, 245, 125 N. W. 115.

We need not consider other issues said to be raised by the answer. We have gone into it far enough to find that it does state a defense and that the order overruling the demurrer must be affirmed.

So ordered.