# THORVAL KELLY, WARD, BY KENNETH E. KELLY, HIS GENERAL GUARDIAN, v. GERTRUDE KELLY, EXECUTRIX OF THE ESTATE OF MILTON M. KELLY, AND OTHERS.

229 N. W. 2d 526.

May 23, 1975—No. 45094.

*Grose, Von Holtum, Von Holtum, Sieben & Schmidt* and *Paul L. Pond,* for appellant.

*Dorsey, Marquart, Windhorst, West & Halladay* and *Thomas Tinkham,* for respondent.

Heard before Sheran, C. J., and Todd and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

Plaintiff appeals from a summary judgment of the Hennepin County District Court entered pursuant to an order granting defendant's motion therefor upon the bases that there exist no possible material questions of fact and that maintenance of the action would constitute a collateral attack upon an order of the Renville County Probate Court dated April 12, 1939. We affirm.

The farm in dispute was owned by Thorval Kelly, his brother, Milton Kelly, and their mother, Rangnild Kelly, as tenants in common, each owning an undivided one-third interest. On January 19, 1922, the three executed a mortgage on this real estate to Northwestern Mutual Insurance Company which mortgage was recorded on February 2, 1922. Upon default, the mortgage was foreclosed, and on April 18, 1936, the mortgaged premises were sold to the mortgagee for $23,616.37. A petition filed by Milton Kelly in the Renville County District Court on March 16, 1937, resulted in an extension of the statutory redemption period until March 1939.

Milton Kelly was duly appointed guardian of Thorval Kelly, an incompetent, on December 16, 1937. On February 28, 1939, Milton Kelly, acting for himself and the other two owners of the land, commenced proceedings in district court to obtain another extension of the redemption period. On March 25, 1939, Milton Kelly petitioned the Renville County probate court for an order authorizing him as guardian to execute a petition for dismissal of the action to extend the redemption period; to allow title to

vest in the mortgagee; and to allow Milton Kelly individually to buy the land from the mortgagee for $1,353.19 less than the mortgagee's investment in the land. Included in the petition were allegations that during the first extension of the redemption period Milton Kelly had had sole charge of the land and sole responsibility for satisfying all mortgage obligations and that, since the mortgagee was willing to sell the land to Milton Kelly for less than the amount of its actual investment, there was no equity of redemption. The petition was granted on March 31, 1939, with the court finding that the termination of the redemption period would not prejudice the guardianship estate.

An amended petition was filed by Milton Kelly on April 7, 1939, stating further that the ward had no assets to enable him to make redemption of the property; that Milton Kelly had devoted his individual efforts and resouces to the operation of the farm; and that any person designated by the court might be called as a witness to verify that the land was not worth the amount required to redeem it from the foreclosure sale. The court, in its amended order dated April 12, 1939, specifically found that Milton Kelly had devoted his own efforts and resources to the operation of the farm without assistance from others; that there was no equity of redemption in the premises; that the ward had no interest in the premises; that the ward's estate could not bear any portion of the burden of redemption; that securing a further extension of the redemption period would be of no possible benefit to the estate; and that if Milton Kelly should repurchase, it would be with the understanding that the ward would have no interest in the real estate.

Upon the death of Rangnild Kelly on December 12, 1945, her son Edward Kelly (father of appellant guardian Kenneth Kelly) commenced an action seeking, as relief, that he and all other heirs of Rangnild be found to be owners of an interest in the real estate on the basis that Milton's sole interest was acquired by his exercise of undue influence upon Rangnild. On December 13, 1949, the district court sustained a demurrer to the complaint,

and a full release was subsequently executed by Edward Kelly, for himself and his heirs, to Milton Kelly.

Milton Kelly remained guardian of Thorval Kelly until the former's death on May 15, 1969. Kenneth Kelly was then appointed the guardian for Thorval in August 1969. It was after this appointment that Kenneth allegedly first learned that Thorval had no interest in the farm and that it was owned by Milton and his wife Gertrude.

On October 31, 1969, Kenneth Kelly filed objections in Renville County probate court, to the allowance of the final accounting of the previous guardian. When the probate court allowed the final accounting in its order dated July 8, 1970, the matter was appealed to the Renville County District Court by Kenneth on August 4, 1970. The matter was continued pending the determination of the subsequent action commenced on May 4, 1971, by Kenneth Kelly in Hennepin County District Court for an adjudication that Thorval Kelly owns an interest in the land purchased by Milton from the mortgagee and for damages and an accounting (the instant action).

The appellant contends that Milton Kelly and his widow, Gertrude Kelly, are liable to Thorval Kelly for damages and an accounting, in that Milton fraudulently purchased the property owned by his ward. The district court found, in addition to the fact that such an action would constitute a collateral attack upon the Renville County probate court order of April 12, 1939, and that there existed no possible material question of fact, that there was no evidence that the statements by Milton Kelly in his 1939 petition were other than true, and that there was no evidence that the facts averred therein were misrepresentations.

The issues presented can be stated as follows:

(1) Is the instant action a collateral attack upon the Renville County probate court order of April 12, 1939?

(2) Is there any genuine issue of material fact so as to preclude the granting of the motion for summary judgment?

(3) Is this action barred by the statute of limitations?

■ Of prime importance upon this appeal is the determination of whether the instant action constitutes a collateral attack upon the Renville County probate court order of April 12, 1939. The appellant's sole contention arises under Minn. St. 1971, § 525.35,[1] which states in part, in speaking of a representative:

"* * * He shall not purchase any claim against the estate nor shall he purchase directly or indirectly or be interested in the purchase of any property sold by him."

The present guardian feels that Milton's purchase of the farm after expiration of the redemption period is fraud as a matter of law and speaks for itself without any further allegations in his claim or any need to show further facts of fraud. As the trial court pointed out, the Renville County probate court order of April 12, 1939, clearly authorized Milton Kelly as guardian to wholly abandon the interest of the ward in said real estate.

The appellant here does not challenge the jurisdiction of the probate court. Rather, the pleadings are framed in terms of the fraud and misrepresentations made by Milton Kelly in connection with the foreclosure sale and subsequent purchase by Milton of land which was, at one time, an integral part of his ward's estate. The attack is therefore collateral, for the essential requirement of allegations that the order itself was procured by fraud has not been satisfied. We must invoke the presumption that jurisdiction was proper. This being so, we have no difficulty in concluding that collateral attack is precluded by Minn. St. 525.70, which states:

"No sale, mortgage, lease, or conveyance by a representative shall be subject to collateral attack on account of any irregularity in the proceedings if the court which ordered the same had jurisdiction of the estate."

Although, strictly speaking, the action of the representative was not a "sale, mortgage, lease or conveyance," there is conclusive

---

[1] Repealed, L. 1974, c. 442, art. 8, § 524.8—102.

evidence that Milton Kelly, as guardian, successfully petitioned the probate court for an order authorizing him to terminate the redemption period and allow title to vest in the mortgagee. Thus, the transaction authorized by the order of March 12, 1939, was in effect a conveyance by the representative and is within the purview of § 525.70.

■ We not only agree that this instant action is a collateral attack precluded by Minn. St. 525.70, but we also agree with the trial court that there is no showing of fraud or misrepresentation in the proceedings leading to the Renville County probate court order in 1939. All the facts relied upon by appellant are taken from the petitions leading up to that order. Appellant merely states that fraud existed at that time, without specifically stating the facts which would constitute this fraud. Appellant, in order to establish any claim, must show in a direct attack on the probate court order that there was fraud in the transaction approved by the probate court and that there was fraud in the proceedings to procure that order. Pangalos v. Halpern, 247 Minn. 80, 76 N. W. 2d 702 (1956). This requirement manifests itself all the more clearly when we see by the undisputed facts that the ward's estate could bear no portion of the burden of redemption. There are, therefore, no genuine issues of fact raised by the pleadings with regard to any alleged fraud to sustain appellant's assertion that there is a jury question which precludes the granting of summary judgment.

■ As to whether this action is barred by the statute of limitations, appellant relies upon Minn. St. 525.702, which provides:

"No proceeding to have declared invalid the sale, mortgage, lease, or conveyance by a representative shall be maintained by any person claiming under or through the decedent or ward unless such proceeding is begun within five years immediately succeeding the date of such sale, mortgage, lease, or conveyance, provided that in case of *real estate sold by a guardian,* no action for its recovery shall be maintained by or under the ward unless it is begun within five years next after the termination of the

guardianship; and that, in case of fraud, minors and others under legal disability to sue when the right of action first accrues may begin such action at any time within five years after the disability is removed." (Italics supplied.)

and Minn. St. 541.05, which provides:

"* * * [T]he following actions shall be commenced within six years:

\* \* \* \* \*

"(6) for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

He contends that the new guardianship appointment in 1969 and the subsequent discovery of the allegedly fraudulent conduct of Milton Kelly by this second guardian invokes the limitation of Minn. St. 541.05. Further, the one-year limitation of Rule 60.02, Rules of Civil Procedure, he asserts, does not preclude the commencement of an independent action to relieve a party from a judgment. 3 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., Authors' Comments, p. 16.

However, a careful reading of Minn. St. 525.702 illuminates the requirement that the real estate must be "sold by a guardian." The record discloses that the real estate was sold by the sheriff following foreclosure of the mortgage. Thus, a strict reading of Minn. St. 525.702 is sufficient to show that it is not applicable to the instant case.

With regard to Minn. St. 541.05, this court has held that in an action for fraud brought more than 6 years after the fraudulent acts relied upon, the plaintiff must allege in his complaint that he did not discover fraud until within 6 years before commencement of the action. Stark v. Equitable Life Assur. Society, 205 Minn. 138, 285 N. W. 466 (1939); Modern Life Ins. Co. v. Todd, 184 Minn. 36, 237 N. W. 686 (1931). In other words, plaintiff must, in claiming the benefit of the provision suspending the

running of the statute of limitations until the discovery of the fraud, affirmatively set forth in his complaint the facts relating to this discovery. Humphrey v. Carpenter, 39 Minn. 115, 39 N. W. 67 (1888). A reading of the complaint leads to the conclusion that appellant failed to comply with this requirement and thus could not rely on this limitation if § 541.05 were applicable. Further, the district court found that the guardian, Kenneth Kelly, learned of the transaction no later than August 1969. There is nothing in the record to indicate the date of discovery—a date which would be needed to compute the 6-year period.

Rather, it appears that the applicable statute of limitations is the one-year limitation set forth in Minn. St. 525.02(4) and Rule 60.02, Rules of Civil Procedure. Thus, although the district court did not reach this issue, it appears that the action would be barred by the statute of limitations.

Affirmed.