Botsford, J.
INTRODUCTION
The plaintiffs in this matter are profoundly deaf individuals who allege that they were sexually and physically abused by the defendants while they were minors attending the Boston School for the Deaf. The abuse of the plaintiffs is alleged to have occurred between 1968 and 1977 for plaintiffs Violet and James Guertin, between 1944 and 1952 for plaintiff Paul Larocque, between 1955 and 1958 for plaintiff Paul Leveille, between 1955 and 1957 for plaintiff Tamara Marcinuk, between 1968 and 1972 for plaintiff Glenn Peters, between 1951 and 1958 for plaintiff William Ross, between 1950 and 1952 for plaintiff Patricia Arsenault, and between 1958 and 1964 for plaintiff James Sullivan.
This matter is before the court on the defendants’ motions to dismiss the amended complaint pursuant to Mass.R.Civ.P. 12(b)(6) on the ground that the plaintiffs’ claims are barred by the relevant statutes of limitation. Also before the court is the plaintiffs’ second motion to amend the first amended complaint pursuant to Mass.R.Civ.P. 15. For the reasons discussed below, the plaintiffs’ motion to amend is allowed. The defendants’ motion to dismiss the second amended complaint is denied.
BACKGROUND
For purposes of this motion, I accept as true the allegations set forth in the plaintiffs’ first amended complaint. Each of the plaintiffs is a profoundly deaf individual who has been extremely limited since birth in his or her ability to communicate orally. Each of the plaintiffs attended the now-closed Boston School for the Deaf (“the School”) located in Randolph, Massachusetts and operated by the Congregation of the Sisters of Saint Joseph. During the relevant time period, the defendants Sister Maiy McAvoy, Sister M. Joanita O’Connor, Sister Maiy Mark, Sister Bernadette Duggan and Sister M. John Berchmans were teachers at the School. Defendant Gaiy Gedney was a physical education teacher and coach at the School. The defendants Sister Helen Thomas, Sister Catherine Corrigan and Sister Elizabeth Benersani were dormitory supervisors at the School. The defendant Sister Maiy Carl Boland was a teacher at the School and was the principal from 1954 to 1966. The defendant Sister Mary Kieran McCormack was a teacher at the School and was the chief executive officer and principal from 1966 to 1971. The defendant Sister Alice Kirby was a teacher at the School and was the superintendent from 1971 to 1974; the defendant Sister Helen Callahan was a teacher and psychologist at the School and was the principal from 1971 to 1973. Defendant John Carroll was a teacher at the School and was principal in 1973. The defendant Sister Miriam Theresa Ringer was a teacher at the School and was principal from 1974 to 1979 and superintendent in 1974 and 1975.
Father Charles Murphy was a counselor at the School. Most Reverend Thomas V. Daily (“Bishop Daily”) was Chancellor of the Archdiocese of Boston from 1973 to 1983, the Vicar General of the Archdiocese of Boston from 1976 to 1983, Administrator of the Archdiocese from 1983 to 1984, and Chancellor and Vicar General of the Archdiocese in 1984.
Defendants John Carroll, Sister Catherine Corrigan, Sister Maiy Mark and Sister Bernadette Duggan are deceased.
With respect to the individual plaintiffs, the amended complaint in summary alleges the following. The plaintiff Violet Guertin attended the School from 1967 through 1977. In 1970, 1971, and 1972, when Violet was respectively seven, eight and nine years old, Sister Maiy McAvoy sexually assaulted and also physically abused Violet Guertin. In 1974, Gaiy Gedney engaged in a pattern of lewd behavior towards her that was sexually abusive. In the period between 1975 and 1978, Father Murphy sexually assaulted her and also intentionally invaded her privacy by purposefully entering a dormitory room when she was naked. Not until recently did Violet Guertin have knowledge or notice that she had been harmed by the conduct of McAvoy, Gedney and Murphy.
Plaintiff James Guertin attended the School from 1963 through 1975. In 1968, when James Guertin was *196 nine years old, Sister Mary Carl Boland committed acts of sexual and physical abuse on him. In 1969, on several occasions, Sister M. John Berchmans confined him to a dark closet for extended periods of time and washed his mouth out with soap. Not until recently did James Guertin have knowledge or notice that he had been harmed by the conduct of Boland and Berchmans.
Plaintiff Paul Larocque attended the School from 1942 to 1954. In 1944, when Larocque was seven years old, Sister Helen Thomas committed acts of sexual abuse on him, and in 1951 and 1952, Sisters Bernard Sproul and Mary Resignata Ryan (not named as individual defendants and now deceased) also sexually abused him. Not until recently did Larocque have knowledge or notice that he had been harmed by the conduct of Thomas and the other two sisters.
Plaintiff Paul Leveille attended the School from 1948 to 1960. In 1954, when Leveille was ten years old, Sister Stanislaus Donovan (not named as a defendant) sexually assaulted him. In 1958, an unidentified staff member of the School confined Leveille to an empty locker in the School for an extended period of time until another student let him out. Not until recently did Leveille have knowledge or notice that he had been harmed by the conduct of Donovan and the unidentified staff member.
Plaintiff Tamara Marcinuk attended the School from 1953 to 1965. In 1955, when Marcinuk was seven years old, two unidentified staff members sexually assaulted her on approximately five occasions. In 1956, Sister Mary Carl Boland, Sister John Elizabeth Murphy (not named as a defendant) and Sister Joanita O’Connor washed Marcinuk’s mouth out with soap several times. Not until recently did Marcinuk have knowledge or notice that she had been harmed by the conduct of Boland, Murphy, O’Connor and the unidentified staff members.
Plaintiff Glenn Peters attended the School from 1963 to 1974. At various times between 1968 and 1972, when Peters was eight to twelve years old, Sister Catherine Corrigan committed acts that were sexually abusive. In 1971, Sister Joanita O’Connor banged Peters’ head against the wall as punishment for using sign language. Not until recently did Peters have knowledge or notice that he had been harmed by the conduct of Corrigan and O’Connor.
Plaintiff William Ross attended the School from 1946 to 1959. In 1951, when Ross was nine years old and did not want to eat soup, Sister Teresita Corliss (not named as a defendant) forced the soup into his mouth. When Ross became ill and vomited, Corliss slapped him across the face. In 1954, Corliss confined Ross to a dark room for an extended period of time. In 1958, Sister Mary Mark sexually assaulted Ross repeatedly. Not until recently did Ross have knowledge or notice that he had been harmed by the conduct of Corliss and Mark.
Plaintiff Patricia Arsenault attended the School from 1943 to 1954. In 1950, when Arsenault was eleven years old, Sister Bernadette Duggan sexually assaulted her on numerous occasions. In 1952, Sister Elizabeth Benersani picked Arsenault up out of her bed by her hair and threw her to the floor. Not until recently did Arsenault have knowledge or notice that she had been harmed by the conduct of Duggan and Benersani.
Finally, plaintiff James Sullivan attended the School from 1958 to 1964. In 1960, when Sullivan was twelve years old, Sister Mary Carl Boland slapped Sullivan across the face and smashed his head against a supply closet window, which broke. On another occasion, Boland hit Sullivan in the face so hard that his nose bled profusely. Numerous times between 1958 and 1964, Sister Boland confined Sullivan to a dark closet; on one occasion in 1960, Sullivan became nauseous and vomited into a toilet in the girl’s bathroom. Sister Catherine Corrigan repeatedly forced Sullivan’s head in and out of the toilet bowl, which was filled with vomit. In 1961, an unidentified priest, Father Doe, repeatedly committed acts of sexual abuse on Sullivan. From 1961 to 1963, Sullivan was also sexually assaulted repeatedly in the student dormitory by older students.
Based on these allegations, in their first amended (and further amended)[3] complaint, all but one of the plaintiffs bring separate direct claims against the various defendants named in the preceding paragraphs for one or more of the following torts: assault, battery, false imprisonment, intentional and negligent infliction of emotional distress, and invasion of privacy.[4] All the plaintiffs also bring claims against certain other defendants — Sister Rita McCormack, Sister Alice Kirby, Sister Helen Callahan, Sister Miriam Theresa Ringer, John Carroll, Bishop Daily, Sister Mary Carl Boland, and Roes I through IX — for negligent hiring, retention and supervision of certain of the other defendants.
DISCUSSION
I. Plaintiffs’ Motion to Amend
The plaintiffs seek to further amend their first amended complaint to include allegations that the School’s failure to teach sign language and its policy of punishing students for using sign language resulted in social, cognitive and developmental delays, causing them to present with functional mental retardation and an extremely limited ability to process information and communicate with their parents or others. The plaintiffs’ motion to amend is supported by the affidavit of Sanjay Gulati, M.D., a staff psychiatrist at Children’s Hospital in Boston and a consultant psychiatrist at the American School for the Deaf. Gulati opines, to a reasonable degree of medical certainty, that students such as the plaintiffs who were not taught sign language at a young age are likely to have acquired veiy limited language competency, to have *197 lacked the ability to experience normal emotional, social and intellectual connections with others, to have lacked an effective way at the time of the physical and sexual abuse to report to their parents what had occurred, and have been unable to understand at the time of the abuse that they had been harmed. Gulati’s affidavit is quite broad and does not discuss specific facts relating to any of the individual plaintiffs.
Under Rule 15(a) of the Massachusetts Rules of Civil Procedure, leave to amend “shall be freely given when justice so requires,” and a judge should allow amendment unless there is good reason for denying the motion. Mathis v. Massachusetts Elec. Co., 409 Mass. 256, 264 (1991); Goulet v. Whitin. Machine Works, Inc., 399 Mass. 547, 549 (1987); Hubert v. Melrose-Wakefield Hosp. Assoc., 40 Mass.App.Ct. 172, 175 (1996). Such reasons include undue delay, bad faith or dilatory motive by the movant, undue prejudice to the opposing party, and futility. Mathis v. Massachusetts Elec. Co., 409 Mass. at 264; Goulet v. Whitin Machine Works, Inc., 399 Mass. at 549-50. The defendants urge the denial of the plaintiffs’ new motion to amend based on undue delay, arguing that the plaintiffs have long known that the defendants were going to seek dismissal based on the statute of limitations, yet failed to raise the issue of developmental delays until now. Given that this suit was commenced only in May of 2004 and that discovery is not scheduled to close until May of 2005, the plaintiffs have not unreasonably delayed in seeking to add the allegations concerning developmental delays. In any event, denials based on undue delay are generally coupled with consideration of other factors such as prejudice to the opposing party. Sharon v. Newton, 437 Mass. 99, 102 (2002). Given that this case is in a relatively early stage, the defendants are unable to demonstrate undue prejudice from the amendment. See id. at 102-03 (no prejudice to opposing party where trial not imminent); Sullivan v. Iantosca, 409 Mass. 796, 800 (1991) (no prejudice where trial not imminent and discovery was far from complete).
The defendants further argue that the proposed amendment should be denied because the new allegations simply do not assist the plaintiffs’ statute of limitations defense. It is proper to deny a motion to amend where the amendment would be futile and would not survive a motion to dismiss. Mathis v. Massachusetts Elec. Co., 409 Mass. at 265; Mancuso v. Kinchla, 60 Mass.App.Ct. 558, 572 (2004). Cf. Cappuccio v. Zoning Bd of Appeals of Spencer, 398 Mass. 304, 314 (1986) (motion to amend properly denied where proposed amendment would not cure defect in complaint). Here, however, the proposed amendment consists of allegations that the School’s failure to teach sign language and its policy of punishing students for using sign language resulted in social, cognitive and developmental delays which left the plaintiffs with an extremely limited ability to process information and communicate with their parents or others, and presenting with functional mental retardation. These allegations, if supported by admissible evidence and credited by the finder of fact, could strengthen at least the plaintiffs’ arguments that the statutes of limitations relevant to their claims were tolled under G.L.c. 260, §7, because the plaintiffs were “incapacitated by reason of mental illness” as that statutory phase has been defined in case law. Accordingly, the proposed amendment is not futile and in my discretion, I will allow the motion to amend. See Friedman v. Jablonski, 371 Mass. 482, 487-88 (1976) (motion to amend appropriate to allege saving circumstances in response to statute of limitations defense).
II. Defendants’ Motions to Dismiss
When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. Berish v. Bornstein, 437 Mass. 252, 267 (2002); Pontremoli v. Spaulding Rehabilitation Hosp., 51 Mass.App.Ct. 622, 624 (2001). The court need not, however, accept legal conclusions cast in the form of factual allegations. Schaer v. Brandéis University, 432 Mass. 474, 477 (2000). A complaint should not be dismissed for failure to state a claim unless it appears certain that the plaintiff is not entitled to relief under any state of facts which could be proved in support of his claim. Berish v. Bornstein, 437 Mass. at 267; Spinner v. Nutt, 417 Mass. 549, 550 (1994); Pontremoli v. Spaulding Rehabilitation Hosp., 51 Mass.App.Ct. at 624. It is a relatively light burden to maintain a complaint in the face of a Rule 12(b)(6) motion. Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998). However, amotion to dismiss lies against a complaint which reveals on its face that the statute of limitations has run before the date the action was commenced. Babeo Industries, Inc. v. New England Merchants Nat’l Bank, 6 Mass.App.Ct. 929, 929 (1978).
The various defendants have focused their arguments on two sets of claims; sexual abuse claims and non-sexual abuse claims. I address each in turn.
A. Defendants’ Motions to Dismiss Sexual Abuse Claims
The defendants contend that the plaintiffs’ sexual abuse claims are barred by the relevant statutes of limitations. Statutes of limitations are “vital to the welfare of society . . . They promote repose by giving security and stability to human affairs . . . [and] encourage plaintiffs to bring actions within prescribed deadlines when evidence is fresh and available.” Olsen v. Bell Telephone Laboratories, Inc., 388 Mass. 171, 175 (1983) (citations omitted). General Laws c. 260, §2A, provides that actions in tort shall be commenced within three years after the cause of action accrues. In addition, G.L.c. 260, §4 provides that actions for assault and battery must be commenced within three *198 years after the cause of action accrues. The general rule in tort actions is that a cause of action accrues when the plaintiff is injured. Riley v. Presnell 409 Mass. 239, 243 (1991); Joseph A. Fortin Constr. Co., Inc. v. Massachusetts Housing Finance Agency, 392 Mass. 440, 442 (1984). If one measures the date of injury by the date of the alleged sexual assault or sexual abuse, clearly under the general rule, all the plaintiffs’ causes of action have long since accrued.
Nonetheless, the plaintiffs argue that accrual of their sexual abuse claims is governed by the so-called “discovery rule.” Under the discovery rule, a cause of action for an inherently unknowable wrong accrues when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant’s conduct. See Riley v. Presnell 409 Mass. at 243; Phinney v. Morgan, 39 Mass.App.Ct. 202, 204, rev. denied, 421 Mass. 1104 (1995). A plaintiff need not have notice of a breach of duty before a cause of action may accrue; it is only required that the plaintiff have sufficient knowledge or notice that he was harmed and knowledge or sufficient notice of the cause of the harm. Riley v. Presnell, 409 Mass. at 243; Bowen v. Eli Lilly & Co., 408 Mass. 204, 206-08 (1990). Individual variations in judgment, intellect or psychological health which are unrelated to the alleged tortious conduct are not considered in determining when a plaintiff knew or should have known of his cause of action. Riley v. Presnell 409 Mass, at 245-46. The standard for accrual is an objective one, under which the statute of limitations begins to run when a reasonable person who has been subjected to the conduct which forms the basis for the complaint would have been able to discern the cause of the harm. Doe v. Creighton, 439 Mass. 281, 283-84 (2003); Riley v. Presnell 409 Mass. at 245. With respect to the sexual abuse of minors, the discoveiy rule has been codified by the Legislature at G.L.c. 260, §4C, which provides in relevant part:
Actions for assault and batteiy alleging the defendant sexually abused [5] a minor shall be commenced within three years of the acts alleged to have caused an injury or condition or within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act, whichever period expires later; provided, however, that the time limit for commencement of an action under this section is tolled for a child until the child reaches eighteen years of age.
Here, the plaintiffs allege that they only recently gained knowledge that they were harmed by the sexual abuse they claim the defendants perpetrated on them, directly or indirectly, when the plaintiffs were children. They further allege that the School’s failure to teach sign language and its policy of punishing students for using sign language resulted in social, cognitive and developmental delays which were the functional equivalent of mental retardation.[6] Thus, the plaintiffs allege that the defendants’ tortious conduct contributed to their inability to understand that they had been harmed by the alleged sexual abuse or to act on such understanding. Contrary to the defendants’ argument, a plaintiffs inability to link his psychological injuries to sexual abuse need not involve repressed memory in order for the §4C discovery rule to apply. See Ross v. Garabedian, 433 Mass. 360, 361-64 andn.2 (2001). For purposes ofaRule 12(b)(6) motion, I must accept the plaintiffs’ allegations as true. Despite the lengthy passage of time between the alleged incidents and the filing of the complaint, I cannot conclude from the face of the complaint that the plaintiffs’ sexual abuse (assault and battery) claims are time-barred, given the applicability of the discovery rule. Cf. Ross v. Garabedian, 433 Mass, at 363-64 (noting that courts are reluctant to grant summary judgment on statute of limitations grounds where it is unclear whether or to what extent a plaintiff perceived a causal connection between sexual abuse and his or her alleged psychological harm).
Similarly, I am not able to conclude that the plaintiffs’ emotional distress claims or their supervisory claims, at least to the extent that they are derivative of the sexual abuse claims, are time-barred. Where emotional distress and other claims are based on alleged sexual abuse to which the discovery rule applies, the “accrual” of such related claims is also governed by the discovery rule. See Ross v. Garabedian, 433 Mass. at 366 n. 8. See also Lareau v. Page, 39 F.3d 384, 389 (1st Cir. 1994); Phinney v. Morgan, 39 Mass.App.Ct. at 205 (discovery rule applies to claim that third party failed to protect minor from sexual abuse).
Further, the plaintiffs contend that accrual of their sexual abuse claims is tolled pursuant to G.L.c. 260, §7, which provides:
If the person entitled thereto is a minor, or is incapacitated by reason of mental illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed.
As recited above, the plaintiffs now allege that the School’s failure to teach sign language and its policy of punishing students for using sign language resulted in social, cognitive and developmental delays which were the functional equivalent of mental retardation and left them with an extremely limited ability to process information and communicate with their parents or others. Therefore, the plaintiffs allege, until very recently they were unable to understand that they had been harmed by the defendants’ sexual abuse and unable to communicate this harm to others.
The Legislature intended the term “incapacitated by reason of mental illness” to be construed broadly, and considered not merely the inability to sue but also the difficulties of the incompetent in giving information *199 and testifying. McGuinness v. Cotter, 412 Mass. 617, 624-26 & n.9 (1992). Cf. Riley v. Presnell, 409 Mass, at 250 (interpreting “insanity” under former version of statute to mean any mental condition which precludes the plaintiffs understanding the nature or effects of his acts and prevents him from comprehending his legal rights). Here, the plaintiffs’ allegations about their functionally limited mental capacities as well as their extremely restricted ability to process information and communicate are sufficient to invoke the tolling provision of §7 based on incapacity by reason of mental illness. Cf. McGuinness v. Cotter, 412 Mass, at 624-26 (evidence that minor’s cerebral palsy prevented him from walking and talking properly, and that he could not read or write, raised factual issue as to whether he was “incapacitated by reason of mental illness” under §7). Since I must accept the plaintiffs’ allegations as true for purposes of this Rule 12(b)(6) motion, I am not in a position to conclude that the sexual abuse claims are time-barred on the face of the complaint.
Finally, I do not agree with the defendants that the plaintiffs’ allegations with respect to the discovery rule are not specific enough to survive a Rule 12(b)(6) motion. Although Mass.R.Civ.P. 9(f) states that when pled, averments of time and place are material and may be challenged by a motion to dismiss, the rule does not require a heightened degree of particularity, as it does with other matters such as fraud, mistake or duress. See Rule 9(b). I decline to follow those jurisdictions which have concluded that in order to invoke the discovery rule, a plaintiff must plead specific facts detailing the time and manner of discovery and the inability to have made earlier discovery despite reasonable diligence. See, e.g., Saliter v. Pierce Brothers Mortuaries, 81 Cal.App.3d 292, 297 (CaLApp. 1978); Kelly v. Kelly, 229 N.W.2d 526, 530 (Minn. 1975). Cf. Ogle v. Hotto, 652 N.E.2d 815, 821 (Ill.App. 1995) (discovery rule pleading requirement is not burdensome and need not contain great detail, but plaintiff must allege facts supporting late discovery). Here, the plaintiffs’ allegations concerning the late discovery of their claims, although thin, are sufficient to withstand a Rule 12(b)(6) motion on the statute of limitations. See Stragusa v. Brown, 971 P.2d 801, 807 (Nev. 1998) (rejecting proposition that plaintiff must allege with specificity the time and manner of discovery and the circumstances excusing the delayed discovery).
B. Defendants’ Motion to Dismiss Physical Abuse and Other Tort Claims
The defendants separately contend that the plainiiffs’ claims for assault and battery, false imprisonment, invasion of privacy and infliction of emotional distress, to the extent that these claims are based on allegations of physical abuse, are barred by the relevant statutes of limitations. With respect to the plaintiffs’ physical abuse and related claims, the pertinent statutes of limitations are G.L.c. 260, §§2Aand 4, both previously described. (See above.)
Under the general rule in tort actions that the cause of action accrues when the plaintiff is actually injured, there is no question that the plaintiffs’ claims for physical abuse, false imprisonment, invasion of privacy accrued long before three years prior to the commencement of this action. To the extent that the plaintiffs allege intentional and negligent infliction of emotional distress and negligent supervision based on these non-sexual torts, such claims would accrue at the time of the battery, false imprisonment, or invasion of privacy, and therefore they too accrued more than three years before the plaintiffs filed their complaint in this action.
In response, the plaintiffs again invoke the discovery rule, arguing that they were not aware of their non-sexual tort claims until recently. However, the discovery rule applies only to “inherently unknowable” causes of action. Flynn v. Associated Press, 401 Mass. 776, 781 (1988). Here, the non-sexual batteries of which the plaintiffs complain were not inherently unknowable; the plaintiffs immediately knew they had suffered a physical injury and knew who the perpetrator of the battery was. See, e.g., Kang v. Kang, 11 P.3d 218, 218 (Okla.Civ.App. 2000) (discovery rule did not apply to wife’s claim of assault and battery against husband, as she was fully aware on the date husband struck her that she was injured, although she did not realize permanence of injury); Tevis v. Tevis, 400 A.2d 1189, 1195 (N.J. 1979) (same). Similarly, the wrongs underlying the plaintiffs’ false imprisonment, invasion of privacy and derivative infliction of emotional distress claims were not inherently unknowable. Cf. Flynn v. Associated Press, 401 Mass, at 781 (discovery rule does not apply to defamation claim); White v. Peabody Constr. Co., Inc., 386 Mass. 121, 130 (1982) (claim for negligent construction of building was not inherently unknowable where widespread water leaks occurred immediately). Accordingly, I conclude that the discovery rule does not apply to the plaintiffs’ non-sexual tort claims.[7]
Nonetheless, the plaintiffs argue that like their claims of sexual abuse, accrual of their non-sexual claims was tolled pursuant to G.L. 260, §7, quoted above at p. 12. In particular, they assert that their claims were tolled because they were incapacitated by reason of mental illness within the meaning of §7. For reasons discussed above, I agree, at least for purposes of the defendants’ motions to dismiss under Rule 12(b)(6).[8] Similarly, I am also unable to state that the plaintiffs’ emotional distress and supervisory claims, to the extent they are based on the physical abuse, false imprisonment and invasion of privacy claims, are time-barred. Finally, the accrual of the plaintiff James Sullivan’s claim of negligent security also depends on the accrual of the underlying torts and therefore cannot be deemed to be time-barred at this juncture.[9]
*200 Nonetheless, given that these torts are alleged to have occurred 30 to 60 years ago, and that harm from the physical abuse, false imprisonment, and invasion of privacy was immediately apparent to the plaintiffs, the interests of justice require that limited discovery be conducted, within the next thirty days, on the issue of when the plaintiffs’ disability under G.L.c. 260, §7, was removed, and when, as a result, they could have pursued their tort claims that were not based on alleged sexual abuse.
C. Motion to Dismiss on Behalf of Three Deceased Defendants
Counsel for three deceased defendants, Sister Catherine Corrigan, Sister Mary Mark and Sister Bernadette Duggan, seeks to dismiss the claims against them pursuant to G.L.c. 197, §9, and Mass.R.Civ.P. 12(b)(2) and 12(b)(5). Counsel has provided death certificates showing that Sister Corrigan died on March 28, 1984, Sister Mark died on December 19, 1994, and Sister Duggan died on April 11, 1988. Counsel contends that the claims against these defendants are untimely pursuant to G.L.c. 197, §9, which provides in relevant part:
Except as provided in this chapter, an executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased and unless, before the expiration of such period, the process in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate.
G.L.c. 197, §9(a).
The purpose of this statute is to expedite the settlement of estates. See Cross v. Hewitt, 52 Mass.App.Ct. 538, 540 (2001). Nonetheless, G.L.c. 197, §9A, provides:
Notwithstanding the provisions of [G.L.c., §9], an action for personal injuries or death, if commenced more than one year after the date of death of the deceased, may be brought against said executor or administrator, provided that such action is commenced within three years next after the cause of action accrues, and provided further [that] any judgment recovered in any action so brought may be satisfied only from the proceeds of a policy of insurance or bond, if any, and not from the general assets of the estate.
If an executor or administrator has not been appointed, then an action allowed under this section may be maintained without such appointment, and shall be maintained naming the decedent as the defendant. In such event any service of process that may be necessary shall be made upon the entity providing the insurance or bond.
This statute was enacted to aid tort plaintiffs in the recovery of damages where they fail to bring suit within the one-year limitations period of c. 197, §9, but the real party in interest is an insurance company. Cross v. Hewitt, 52 Mass.App.Ct. at 541. The plaintiffs contend they are pursuing good faith discovery on the issue of whether Sisters Corrigan, Mark and Duggan had any insurance coverage that might provide a recovery in this suit. Although, in light of the sisters’ calling, the existence of insurance seems doubtful, until this discovery is complete, I am not in a position to rule that the claims against those defendants are barred by G.L.c. 197, §9(a). Further, assuming such insurance exists, I cannot conclude as a matter of law that plaintiffs failed to file suit within three years of the accrual of the cause of action under §9A, given the discovery rule and tolling issues discussed above.[10]
ORDER
For the foregoing reasons, it is hereby ordered that the plaintiffs’ second motion to amend the First Amended Complaint be allowed, provided that the plaintiffs file and serve within ten days a complete document entitled Third Amended Complaint that incorporates all the allegations of their first amended complaint as amended to date; and that all of the defendants’ motions to dismiss this third amended complaint be denied. It is further ordered that, without prejudice to or interference with the ongoing discovery among the parties concerning the plaintiffs’ allegations, the defendants be entitled to conduct focused discovery within the next thirty days on the issue of when, under G.L.c. 260, §7, the incapacity by reason of mental illness claimed to be suffered by each of the plaintiffs was removed; the purpose of such discovery is to permit the defendants to pursue their statute of limitations defenses to the plaintiffs physical abuse and related claims.
*201 ‘The Massachusetts Laza “Reporter Cite as 19 Mass. L. Rptr. No. 9, 201 (May 9, 2005)

The plaintiffs moved at an earlier time to amend the first amended complaint to add additional allegations by Violet Guertin against Father Murphy. I allowed that motion. The plaintiffs’ apparent unwillingness to name their proposed amendments to the first amended complaint as “second amended complaint,” “third amended complaint,” etc., *201 causes confusion. As set out in the order below, the plaintiffs are to file a single document containing all the allegations they have set out in the various amendments to the first amended complaint, and to call that document the “third amended complaint.” This will be the operative version of the plaintiffs’ complaint until further order of the court.

Not eveiy plaintiff brings every one of these tort claims; the claims identified in the text is the collective list. It should also be noted that the plaintiff Leveille brings no direct claims against any defendant.

Secüon 4C enumerates by statutory reference those criminal acts which constitute “sexual abuse” for purposes of the section.

The fact that the plaintiffs have been profoundly deaf since birth would be relevant to their actual knowledge of causation, but not to the reasonableness inquiry. Personal traits unrelated to the tort are not the type of individualized characteristics considered under §4C. See Doe v. Creighton, 439 Mass. 281, 284 and n.6 (2003).
The plaintiffs’ allegations concerning the effect on them of the School’s refusal to teach sign language also form the basis for the plaintiffs’ invocation of the tolling provisions of G.L.c. 260, §7, which is discussed in the next paragraph of text. The argument here, however, appears to be separate from c. 260, §7 and rather deals with the application of the discovery rule to these particular plaintiffs’ claims of sexual abuse.

Even if the discovery rule applied, it would not aid the plaintiffs with respect to their non-sexual tort claims. The plaintiffs argue that physical abuse was so commonplace at the School that they did not realize at the time that it was wrong. For purposes of the discovery rule, however, it is the facts underlying the claim that must be inherently unknowable, not the fact of a breach of duly or the legal theory for the cause of action. See Gore v. Daniel O’Connell’s Sons, Inc., 17 MassA.pp.Ct. 645, 647 (1984).

defendants argue that Violet Guertin’s claim of invasion of privacy, based on Father Murphy’s entering her room while she was naked, and Peters’ claim of invasion of privacy, based on Sister Corrigan’s forcing him to stand naked in front of numerous nuns, fail to state a claim upon which relief can be granted. General Laws c. 214, §1B, provides “a person shall have a right against unreasonable, substantial or serious interference with his privacy.” Although most appellate cases have involved the dissemination of personal information, see Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517 (1991), Icannot say that the Supreme Judicial Court would not recognize a § IB claim based on intrusion on seclusion. See Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 382 n. 16 (2005) (noting different theories of invasion of privacy, including intrusion on seclusion, and specifically declining to adopt the false light theory). Cf. Commonwealth v. Wiseman, 356 Mass. 251, 258 (1969), cert. denied, 398 U.S. 960 (1979) (court properly granted injunc-tive relief to prevent showing of film which invaded privacy of mentally ill inmates who were depicted naked and in degrading situations). In any event, a complaint should not be dismissed under Rule 12(b)(6) merely because it alleges a novel theory of recovery. Bell v. Mazza, 394 Mass. 176, 183 (1985).

There is no merit to the defendants’ argument that Sullivan fails to state a claim because the defendants owed no legal duly to protect him from rape by other students. A school has a duty to provide students with reasonably safe school premises. Alter v. Newton, 35 Mass.App.Ct. 142, 145, rev. denied, 416 Mass. 1105 (1993) (public high school). See also Mullins v. Pine Manor College, 389 Mass.47, 52-54(1983) (college had duty to protect residents from foreseeable criminal acts); Doe v. Westlake Academy, 2000 WL 1724887 (Sup.Ct. Nov. 21, 2000) (12 Mass. L. Rptr. 353) (private residential school had duty to protect mentally ill adolescents from foreseeable criminal acts).

I need not address counsel’s argument that the claims should be dismissed pursuant to Mass.R.Civ.P. 12(b)(2) because the court lacks personal jurisdiction over a dead person. The real issue is the nullity doctrine, which states that a complaint brought against a deceased person cannot be maintained because it is in truth brought against nobody. See Cross v. Hewitt, 52 Mass.App.Ct 538, 539 n.5 (2001). As discussed in the text above, G.L.c. 197, §9A permits a plaintiff to file suit against a deceased person where the real party in interest is an insurance company. See Cross at 541. Following discovery, if any insurance policies or bonds are located, the insurer may raise the issue of lack of good cause for failure to comply with Rule 4(j) regarding prompt service.